Jasen, J.
This appeal squarely presents the issue of the authority of law enforcement officials to temporarily detain and question suspects upon less than probable cause for charges of crime after advising them of their Fifth and Sixth Amendment rights.
At about 3:00 a.m. on October 4, 1964, Addie Brown was brutally stabbed 31 times while in the elevator of the apartment building in which she lived in New York City. Two men, attracted by her screams, heard running footsteps and the slamming or closing of a door. Mrs. Brown was unable to respond to questioning and died at 3:30 a.m.
The police questioned a large number of persons and conducted an investigation which established that no one witnessed the murder or observed the killer leave the scene of the crime. They were unable to discover any direct evidence concerning the identity of the killer. During the course of this investigation, the police conducted a “ canvass ” of the apartment building during which they learned that defendant had been present in the building at the time of the crime. They also learned that defendant, a known narcotics addict, who constantly frequented the apartment house, had not been seen since the killing.[1] The police made several fruitless attempts to locate defendant through his mother who lived in the same apartment building. They interpreted Mrs. Morales’ statements to them to mean that she did not know where defendant was. Finally, on the tenth day of defendant’s continued “ absence ” from the area of the crime, October 13, Detectives Carroll and Damn staked out Mrs. Morales ’ beauty parlor.
Defendant appeared at his mother’s business establishment on October 13 because he knew the police were attempting to locate him through his mother for questioning, and was apprehended by detectives upon his arrival at 8:00 p.m. He was told, “ We [were] looking for you ” and placed in Detective Daum’s car. He was not informed that he was under arrest. In response to defendant’s question concerning the reason for placing him in the car, Detective Carroll replied, “ Well don’t worry about it, I will ask you a few questions, that’s all.” Mrs. Morales was *58 not allowed to speak to her son, nor did he ask to speak to her. However, the apprehending detectives informed her that defendant would be released in an hour or so after questioning. Defendant was then driven to the 42nd Precinct Station in the Bronx, where he was questioned.
The record does not indicate that physical force was used in taking defendant to the 42nd Precinct. In fact, defendant testified that he was so loosely guarded when taken from the car to the station that he could have safely escaped but did not because he had no reason to do so. However, he was not free to leave at the time he was apprehended and would have been restrained had he attempted to flee.
Upon arrival at the 42nd Precinct at about 8:30 p.m. and prior to being questioned, defendant was informed of the subject matter of the investigation, his right to remain silent, his right to have a lawyer at any time, and advised that any answers he gave could be used against him. Shortly thereafter, defendant confessed that he killed Addie Brown when she resisted his attempts to rob her for money to buy narcotics. The substance of this confession was reduced to writing and signed by defendant at 9:05 p.m.[2]
Defendant was convicted after a jury trial of felony murder in • Supreme Court, Bronx County, and sentenced to life imprisonment. The Appellate Division unanimously affirmed, without opinion.
On this appeal defendant contends that his confessions should have been suppressed because they were evidence obtained as a result of an unreasonable seizure proscribed by the Fourth Amendment. Specifically, he argues that these statements were illegally taken because they were obtained during a period of detention which was unlawful because it had not been predicated upon probable cause.
It may be conceded that the apprehending detectives did not have probable cause to justify an arrest of defendant at the time they took him into custody. Moreover, the record does not support a finding that defendant consented to his detention and questioning. However, it does not follow that defendant was unreasonably detained within the meaning of the Fourth *59 Amendment. Considering the totality of the circumstances of this case, we conclude that defendant’s temporary detention for questioning represented a reasonable exercise of the police power.
Initially, it must be noted that defendant was not formally arrested on a charge of crime within the meaning of our arrest statute, section 167 of the Code of Criminal Procedure. (United States v. Bonanno, 180 F. Supp. 71, 77 [S. D. N. Y., 1960], revd. on other grounds sub nom. United States v. Bufalino, 285 F. 2d 408 [2d Cir., 1960]; United States v. Thomas, 250 F. Supp. 771 [S. D. N. Y., 1966]; People v. Hoffman, 24 A D 2d 497; United States ex rel. Spero v. McKendrick, 266 F. Supp. 718 [S. D. N. Y., 1967].) Section 167 defined arrest at the time of defendant’s apprehension as “ the taking of a person into custody * * * for a crime.” It is beyond dispute that the apprehending detectives only intended to temporarily detain defendant for an hour or less for questioning at the time they took him into custody.
Likewise, defendant cannot reasonably be inferred to have considered his temporary detention for questioning as an arrest. Defendant was a 30-year-old man who had been involved with the law on numerous occasions in connection with his arrests for policy and narcotics violations. He supported himself by “ hustling ” (shoplifting) when he was not working. He was educated in New York City, graduated from junior high school and spent several years in trade school. In other words, defendant was not innocent in the ways of the world, nor inexperienced in the workings of the law, at the time of his detention for questioning. In fact, defendant has not contended that he was arrested but, rather, has chosen to rely upon the stronger argument that he was unreasonably detained without probable cause.
Concluding then that defendant was technically not arrested within the meaning of our arrest statute, the question narrows to whether the police unreasonably seized defendant within the meaning of the Fourth Amendment by taking him to the 42nd Precinct Station for questioning. The Fourth Amendment bars “ unreasonable ” seizures of the person and states that warrants may issue only upon probable cause. Although the Fourth Amendment may be fairly construed as encompassing the “ seizure” of an individual, every detention of an individual *60 does not constitute a constitutionally proscribed “ unreasonable seizure (United States v. Middleton, 344 F. 2d 78 [2d Cir., 1965]; United States v. Glover, 372 F. 2d 43, 46, n. 4 [2d Cir., 1967]; United States v. Bonanno, supra; United States v. Thomas, supra; United States ex rel. Spero v. McKendrick, supra; People v. Nieto, 247 Cal. App. 2d 364, cert. den. 387 U. S. 911; State v. Dilley, 49 N. J. 460; People v. Mickelson, 59 Cal. 2d 448; State v. Hatfield, 112 W. Va. 424.)
This court recognized the common-law authority of law enforcement officials to detain persons for investigation as a reasonable and necessary exercise of the police power for the prevention of crime and the preservation of public order in People v. Rivera (14 N Y 2d 441, cert. den. 379 U. S. 978 [1965]). Indeed, we recently upheld the constitutionality of section 180-a of the Code of Criminal Procedure, popularly known as the “ Stop and Frisk ” law, in People v. Peters (18 N Y 2d 238, probable jurisdiction noted 386 U. S. 980) and People v. Sibron (18 N Y 2d 603, probable jurisdiction noted 386 U. S. 954). Of course, this statute is limited to the stopping, questioning and frisking of persons in public places upon reasonable suspicion. We have also held that probable cause can be obtained during a “ stop ” authorized by common law and by section 180-a, and this probable cause will support a formal arrest and a contemporaneous incidental search. (People v. Rivera, supra; People v. Peters, supra.)
Other courts have recognized the power to detain for investigation as extending to the police station. The Appellate Division, Second Department, recently upheld detention of a suspect at a police station pending further investigation as a detention for inquiry not amounting to an arrest under the law of our State. (People v. Hoffman, 24 A D 2d 497, supra.) The Court of Appeals, Second Circuit, upholds the power of the police to detain a person for a reasonable period of time for the purpose of interrogation. (United States v. Glover, supra, p. 46, n. 4; United States v. Middleton, supra.) Indeed, Lumbabd, Ch. J., in United States v. Vita (294 F. 2d 524, 529-534 [2d Cir., 1961], cert. den. 369 U. S. 823 [1962]) expressed the view that four or five hours of police detention for the purpose of questioning does not constitute an arrest. (Cf. United States v. Bonanno, supra; United States v. Thomas, supra.) However, *61 we need not go so far in this case. It is enough that the police were justified in the record as developed in detaining and questioning defendant for a short and reasonable period of time.
This question is complicated by the fact that the Supreme Court has never settled the perimeters of constitutionally unreasonable seizures (cf., e.g., Watts v. Indiana, 338 U. S. 49, 58, 61-62; Culombe v. Connecticut, 367 U. S. 568, 576-581; United States ex rel. Corbo v. La Vallee, 270 F. 2d 513, 518 [2d Cir., 1959], cert. den. 361 U. S. 950; United States v. Vita, supra; United States v. Middleton, supra; Collins v. Beto, 348 F. 2d 823 [5th Cir., 1965]). In the single case that squarely raised before the Supreme Court the constitutionality of the authority to stop persons briefly for the purposes of criminal investigation (Rios v. United States, 364 U. S. 253 [I960]), the court declined to decide the question.[3] The Supreme Court left this problem open in its most recent decision dealing with this issue (Clewis v. Texas, 386 U. S. 707 [1967]), stating at page 711 (n. 7): “ [Petitioner must be considered to have been taken into custody either at the time the. officer came to get him, or shortly thereafter when the police, by their conduct, effectively asserted a right to detain him indefinitely at the jail.” (Emphasis supplied.)
We are thus squarely confronted with the perplexing question of the authority of law enforcement officials, though lacking sufficient cause to justify an arrest, to detain defendant for a reasonable period of time for questioning as a constitutional issue of first impression.[4] The resolution of this issue requires striking a balance between the right of the individual to move freely without undue restraint or interference and society’s need to prevent crime and bring criminals expeditiously to justice. (Cf. Barrett, Personal Rights, Property Rights, and the Fourth Amendment, 1960 Supreme Court Review 46, 57-65; *62 cf. State v. Dilley, supra, p. 464; cf. People v. Mickelson, supra, p. 450.)
We note that the Supreme Court recently similarly employed a balancing of interests approach in other areas dealing with the Fourth Amendment in determining whether a governmental invasion of privacy was unreasonable in Camara v. Municipal Court (387 U. S. 523 [1967]).
Broadly viewed then, the issue can be stated as whether the police possessed sufficient cause to interfere with defendant’s movement to the extent revealed by the facts of this case. This problem involves weighing the seriousness of the known crime (a brutal murder) and the degree of suspicion possessed by the police against the magnitude of the personal rights encroached upon.
The common-law rights and constitutional guarantees of personal liberty signify liberty as regulated by law. No citizen has the unrestrained right to do as he pleases in derogation of the rights of others. Individual rights are subject to reasonable control by the State for the general welfare of all citizens. As recognized by this court in People v. Rivera (supra) it is the duty and function of police officers to enforce criminal laws and bring violators of these laws to justice. Interrogation of those who know something about the facts is the chief means of solution of crime. The public interest requires that such interrogation not he completely forbidden so long as it is conducted fairly, reasonably, within proper limits and with full regard to the rights of those being questioned. Indeed, the interest of the State in bringing a criminal to justice is so vital that one known to be innocent may be detained, in the absence of bail, as a material witness.
Mr. Justice Frankfurter’s comprehensive discussion of this problem in Culombe v. Connecticut (supra) is particularly instructive because this case was decided on June 19, 1961 with the landmark case of Mapp v. Ohio (367 U. S. 643) concerning the application of the Fourth Amendment to the States. At pages 590-592, Justice Frankfurter states: “ And, in a long series of cases, this Court has held that the Fourteenth Amendment does not prohibit a State from such detention and examination of a suspect as, under all the circumstances, is found not to be coercive.” (Citations omitted.) Justice Frankfurter also *63 analyzed the issue of detention for questioning as a due process question. He explained (p.- 569) that the fundamental problem involved was “ reconciling the responsibility of the police for ferreting out crime with the right of the criminal defendant, however guilty, to be tried according to constitutional requirements ” and recognized the need for properly limited interrogation.
This prerogative of police officers to detain persons for questioning is not only essential to effective.crimifial investigation, but it also protects those who are able to exculpate themselves from being arrested and having formal charges made against them before their explanations are considered. (People v. Peters, supra.) The fact that detention is not recorded as an arrest and may not be considered by the individual as an arrest is also important.
The evil to be guarded against is the danger posed to constitutional rights by incommunicado questioning, without advice as to a suspect’s rights. This evil can be controlled by fully advising a person of his rights and providing counsel upon request. Where, as here, the defendant is advised of his rights,[5] he is confronted with a clear choice. If he declines to talk, the police must release him unless they have probable cause to arrest on a charge of crime. The fact that defendant was questioned in a police station should not be controlling, although, of course, it is considered with all the other circumstances in determining the reasonableness -of police conduct. Police station interrogation facilitates questioning because trained investigators and stenographic facilities are present. Its privacy eliminates the distractions caused by crowds which may - form during questioning conducted on the street.
In conclusion, the police were justified in questioning defendant in the manner in which they did because of the exceptional *64 circumstances of this case. There was a high degree of public interest involved resulting from the confluence of a brutal crime and a lack of practical alternative investigative techniques. The checkerboard square of the police investigation, although resting upon circumstantial evidence, pointed only to defendant. The public interest in questioning defendant was, therefore, great. In fact, defendant was the only person the police could have reasonably detained for questioning based upon the instant record. Finally, custodial interrogation, the investigative technique, was reasonably applied to the needs of the situation.[6] The explanation of defendant’s constitutional rights clearly exceeded the requirements of the law as it was understood at the time of his interrogation. The period of proposed detention was brief, approximately one hour. Defendant, experienced in police procedures, could not have regarded his temporary detention as tantamount to an arrest. Of course, when defendant confessed approximately 15 minutes after questioning began, detectives then had probable cause to arrest him on a charge of crime.
Nothing is more offensive to our deep concern for the dignity of the individual than unnecessary restraint by the police. Lengthy detention on mere suspicion breeds abuse of those safeguards which a civilized society must erect to protect even the most reprehensible of its members. However, the possibility that power given to law enforcement officers may be abused does not require that they be left powerless to make reasonable inquiry. The reasonableness of their behavior may be assured by close judicial supervision of the methods used.
It is recognized that detention for questioning has its manifest evils and dangers. This decision is, therefore, limited to the exceptional circumstances presented on this appeal involving a serious crime affecting the public safety. We hold merely that a suspect may be detained upon reasonable suspicion for a reasonable and brief period of time for questioning under carefully controlled conditions protecting his Fifth and Sixth Amendment rights. Mass detentions for questioning are never *65 permissible. The scope of the authority to question is limited to those persons reasonably suspected of possessing knowledge of the crime under investigation in circumstances involving crimes presenting a high degree of public concern affecting the public safety.
Our review of the other questions raised on this appeal finds no error requiring reversal of this judgment of conviction.
Accordingly, the judgment of the Appellate Division should be affirmed.
Judges Burke, Scileppi, Bbrgan, Keating and Bbeitel concur; Chief Judge Fuld concurs in result but solely on the ground that the record established that defendant waived his constitutional rights and acquiesced in his being interrogated by the police at the police station.
Judgment affirmed.

. Defendant testified that he returned to his mother’s apartment in the building on several occasions after the murder. However, this fact was unknown to the apprehending detectives.

. Defendant’s confessions and admissions were found voluntary at a pretrial Huntley hearing.

. Henry v. United States (361 U. S. 98 [1959] ) is not authoritative since the Government explicitly conceded that an arrest had occurred at the moment the car in which defendants were traveling was stopped by F.B.I. agents, and only argued that the information in possession of the agents justified the arrest.

. The United States Supreme Court is currently faced with the related issue of the power of law enforcement officials to stop and frisk a suspect upon less than probable cause. (People v. Peters, 18 N Y 2d 238, probable jurisdiction noted 386 U. S. 980, supra; People v. Sibron, 18 N Y 2d 603, probable jurisdiction noted 386 U. S. 954, supra.)

. This ease was tried prior to Miranda v. Arizona (384 U. S. 436, decided June 13, 1966) and the requirements of that case are hot - directly applicable to defendant (Johnson v. New Jersey, 384 U. S. 719; People V. McQueen, 18 N Y 2d 337) although relevant on the question of voluntariness of defendant’s confession (Davis v. North Carolina, 384 U. S. 737). Although defendant was not informed prior to interrogation that a lawyer would be appointed to represent him if he were indigent, the advice to him complied with Miranda in all other respects and exceeded the requirements of the law as it was understood at the time of the trial. (People v. Gunner, 15 N Y 2d 226.)

. The fact that defendant’s mother was not allowed to speak to defendant at the time of his initial apprehension has been considered in our determination of the reasonableness of the police conduct under all the circumstances of the case. (People v. Carbonaro, 21 .N Y 2d 271.)