Joseph J aspan, J.
A novel and interesting question of law is posed by the defendant’s motion to suppress any identification of him as the culprit in this case. The defendant moves, in effect, for immunity from prosecution.
On March 28, 1975 at about 4:50 p.m., a young man approached a change booth of the Bergen Street station of the IRT and after passing in a threatening note and pointing a gun at the agent, received and ran off with something in excess of $90 in bills and change. The agent, Gloria Brizz, immediately called the Transit Police and provided a detailed description. The armed robber was not then apprehended.
On April 23, 1975 the defendant was on a train in the company of a juvenile when the latter was arrested by Transit Police Officer Chambers for a token booth robbery at the Franklin Avenue, Brooklyn, subway station. The officer thought that the defendant met the description in another pending case and on a "hunch” detained him and took him to Transit Police Headquarters where he was questioned and photographed. The defendant was detained some five hours when he was formally arrested on the charges in this case.
In those intervening hours, the photograph of the defendant was placed in a group of 10 pictures and spread in front of the complainant. Without suggestion by the police, the agent, Brizz, selected defendant’s picture as the man who had robbed her at gun point. The defendant was placed in a three-man lineup and paraded past the complainant, who again identified him as the perpetrator of the crime.
After a hearing before me, I conclude and find that the photo-identification process was not conducted in violation of the defendant’s constitutional rights, the ensuing lineup was *194 not tainted, and in any event, the agent had an independent source for an in-court identification.
The defendant argues, however, that the five-hour investigatory detention was illegal and "poisoned” any subsequent identification.
Investigatory stops for questioning on less than probable cause is authorized by statute (CPL 140.50) and by common law (People v Morales, 22 NY2d 55; United States v Thomas, 250 F Supp 771, affd 396 F2d 310; Adams v Williams, 407 US 143). Investigatory detention for a brief time, without significant interruption of liberty, has been justified and upheld (Morales, supra). However, it lacks Supreme Court approval. An appeal to that court in Morales resulted in a finding (396 US 102) that such a detention went beyond Terry v Ohio (392 US 1) and Sibron v New York (392 US 40), but the opinion stopped short of a determination as to whether it was constitutionally valid or was in conflict with Davis v Mississippi (394 US 721).
In this State, the issue was again considered in People v Cantor (36 NY2d 106) in an opinion which is consistent with Terry and Sibron and more restrictive than Morales. Cantor (pp 113-114) severely limits the right to stop or detain, stating that "common-law authority of the police to make investigative inquiries * * * does not give the police a license to violate the Constitution * * * and the common-law power to inquire does not include the right to unlawfully seize.” Seizure was defined as the physical or constructive detention with a significant interruption of liberty.
While the words in Cantor which prohibit an "unlawful seizure” leave the door open to some detention, it is obvious that the court is proscribing anything more than a brief stop absent some "specific and articulable facts” from which logical deductions reasonably prompted, conclude that the suspect has committed, is committing, or is about to commit a crime. The State Legislature, in enacting CPL 140.50, also intended a brief stop in limiting the inquiry to name, address, and an explanation of the subject’s conduct.
In the case at bar, the detention was hardly brief — lasting some four to five hours. It could not be justified by the information available to the transit police officer at the time it commenced. While Transit Police Officer Chambers is to be credited with good police work in associating the defendant with a previously-issued description of the perpetrator of the *195 Bergen Street robbery, the critical element of his major premise was a hunch heightened by the defendant’s association with another who committed a similar crime. The police officer was not then in possession of hard and articulable facts to support an arrest, and neither his hunch nor good faith could support the action taken.
I hold the lengthy investigatory detention of the defendant to be an unlawful invasion of his constitutional rights, and consequently any evidence which derives from that detention must be suppressed (Wong Sun v United States, 371 US 471; Brown v Illinois, 422 US 590).
Significant questions now suggest themselves: "What evidence derives from the detention?” "Does apprehension constitute evidence?”
Defendant, in urging a suppression of all identification, relies principally upon Davis v Mississippi (394 US 721). In that case, 40 or 50 youths were rounded up by the police and fingerprinted in the hope they may find a match for the latent prints discovered at the scene of the crime and thus identify the culprit. As a result of this fingerprinting, the defendant was arrested and charged with the crime of rape. The court held (p 724) the detentions to be in contravention of the Fourth Amendment and the fingerprints of the defendant to constitute illegally-seized evidence and inadmissible at the trial "however relevant and trustworthy [the] seized evidence may be as an item of proof.”
But the finding of the court is based on the premise that the fingerprints of the defendant constituted evidence, an issue highlighted by the dissent of Mr. Justice Stewart, who wrote (p 730): "Fingerprints are not 'evidence’ in the conventional sense that weapons or stolen goods might be.”
The majority, in pointing to the significance of the prints, noted (p 723) that "the victim did not identify petitioner as her assailant at any of [these] confrontations.” Thus, the fingerprints taken from the defendant Davis during his unlawful detention became the only significant proof on the issue of identification. It was the evidentiary link between the defendant and the crime.
But Davis is clearly distinguishable from the case at bar. Here, the unlawful detention led to the arrest of the defendant — not to evidence of his guilt. An arrest is not evidence and is not destructive of the defendant’s presumed innocence. It is merely a vehicle for the ultimate trial of the substantive *196 issues. The intervening police action, which itself may be suppressed, does not change the character of an arrest from an event into evidence. The fact that the defendant was apprehended by unlawful methods may give rise to a remedy for violation of his civil rights, but does not immunize him from prosecution.
I am not suggesting that all police conduct — however oppressive — may be used to effect a legal arrest. While limitations on such activity may be required to prevent an utter disregard of the rights of our citizens, it is not apparent to me that such a drastic remedy is required in this case where the detention was selective and not without some basis.
The right to arrest cannot, however, validate those elements of the process which produced matters of an evidentiary nature.
The photo and lineup identifications were conducted under standards of fairness which support a finding that agent Brizz had an independent source for her identification. But these processes and results are evidentiary, although not always admissible (People v Coffey, 11 NY2d 142; People v Christman, 23 NY2d 429), and are therefore suppressed.
But the People may offer the testimony of agent Brizz based upon her independent recollection.
Our courts have sustained identifications based on independent sources even though it has been preceded by other improper identification procedures (People v Logan, 25 NY2d 184) so long as the People have proven by clear and convincing evidence that the in-court identification was untainted by what took place previously (People v Ballott, 20 NY2d 600, 606; People v Harrington, 29 NY2d 498).
The motion of the defendant is granted to the extent indicated, and otherwise denied.