■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MELVIN MORALES, Appellant.—Order, Supreme Court, Bronx County; entered on or about May 12, 1971, affirmed on the opinion of Gellinoff, J. Concur—Kupferman, J. P., and Silverman, J.; Lupiano, J., and Birns, J., concur in separate memoranda, and Murphy, J., dissents in a memorandum, as follows: Lupiano, J. (concurring). I also concur in the conclusion by Justice Murphy that the evidence adduced at the hearing, and on the entire record, was insufficient to establish that the police had probable cause to arrest defendant. I further concur with Justice Birns' observation that "On the present review of this record, under the totality of the circumstances herein considered by the trial court, and in view of the Court of Appeals previous holding herein," it must be concluded "that it was indeed reasonable for the police, even absent probable cause or consent of defendant to be detained, to briefly detain him for questioning." Moreover, study of the record herein, viewed under the totality of the circumstances, warrants the conclusion that Morales' confrontation with the police was voluntarily undertaken by him. While not unmindful of the fact that the Court of Appeals in originally affirming Morales' conviction stated that the record under review at that time "does not support a finding that defendant consented to his detention and questioning" *(People v Morales,* 22 NY2d 55, 58 [Chief Judge Fuld concurring in result solely on ground that said record established that Morales, *inter alia,* acquiesced in his being interrogated by the police at the police station]), the United States Supreme Court remanded the case for an evidentiary hearing at which "the State may be able to show that there was probable cause for an arrest *or that Morales' confrontation with the police was voluntarily undertaken by him* or that the confessions were not the product of an illegal detention" *(Morales v State of New York,* 396 US 102, 105–106) (emphasis supplied). The issue as to such *voluntary* confrontation is related in some measure to the question of the legality of the detention. Relevant to this issue are the following: On October 12, 1964, the police informed defendant's mother that they wanted to interrogate defendant. On October 13, 1964, she informed him that the police wanted to speak to him. According to her testimony, defendant responded that he would confront the police and she told him to come to her place of business for this purpose. She subsequently told the police that defendant was planning to come to her beauty parlor and they decided to meet him there. Aside from whether defendant consented to his detention, it is clear that he confronted the police voluntarily at his mother's place of business with foreknowledge that they wanted to question him. This fact, not viewed in isolation but in the context of the surrounding circumstances, obtains on this record, telling significance. Rather than question defendant at his mother's business establishment, the police apparently determined to conduct such interrogation at the precinct house, a not unreasonable decision. "Upon arrival at the 42nd

Precinct at about 8:30 P.M. and prior to being questioned, defendant was informed of the subject matter of the investigation, his right to remain silent, his right to have a lawyer at any time, and advised that any answers he gave could be used against him. Shortly thereafter, defendant confessed that he killed Addie Brown when she resisted his attempts to rob her for money to buy narcotics. The substance of this confession was reduced to writing and signed by defendant at 9:05 P.M." *(People v Morales, supra,* p 58). The fact that defendant confessed within 15 minutes after his arrival at the station house, coupled with his initial voluntary confrontation with the police whom he knew wanted to interrogate him, impinges upon the free will aspect as it relates to the interrogation. Under the circumstances herein, it lends inferential support to the conclusion that defendant's conduct was *voluntary* to the extent necessary to warrant refusal to suppress his confession. It is of significance that "defendant was not innocent in the ways of the world, nor inexperienced in the workings of the law, at the time of his detention for questioning" *(People v Morales, supra,* p 59). "The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right" *(Michigan v Tucker,* 417 US 433, 447). As defendant voluntarily confronted the police, the underlying premise for the exclusionary rule does not obtain and the deterrence rationale of the rule may not serve to deprive the People of reliable and probative evidence. As defendant confronted the police with the expectation of being interrogated, the holding of such interrogation, of necessity, would constitute a form of expected detention. The mere fact that the interrogation proceeded immediately thereafter not at the mother's place of business, but at the police precinct, may not in and of itself serve to invoke the exclusionary rule requiring suppression of defendant's confession. At this point it is noted that the Supreme Court, Bronx County, after the postconviction hearing held pursuant to the mandate of the United States Supreme Court *(Morales v New York, supra),* determined that defendant willingly accompanied the police to the station house. Indeed, on the original appeal from conviction, the Court of Appeals similarly declared: "The record does not indicate that physical force was used in taking defendant to the 42nd Precinct. In fact, defendant testified that he was so loosely guarded when taken from the car to the station that he could have safely escaped but did not because he had no reason to do so. However, he was not free to leave at the time he was apprehended and would have been restrained had he attempted to flee" *(People v Morales, supra,* p 58). Obviously, under the alternative tripartite test laid down by the United States Supreme Court, even assuming that the confessions were the product of an illegal detention and that there was no probable cause for an arrest, the fact that defendant's *confrontation* with the police was voluntary, would serve to render his confessions free from suppression. Accordingly, I conclude on this record and under all the circumstances herein that defendant's confrontation with the police was voluntarily undertaken by him and also that the confessions were not the product of an *illegal* detention. I concur for affirmance for these reasons.

Birns, J. (concurring). In voting with the majority to affirm the order below, I nonetheless agree with Judge Murphy that the evidence adduced at the hearing, and on the entire record, was insufficient to establish the police had probable cause to arrest defendant or that he consented to be detained. In fact, this appeared to be the view of the Court of Appeals when the case was first before it *(People v Morales,* 22 NY2d 55). However, the Court of Appeals in affirming the judgment of the court below declared that, even

absent probable cause or consent to be detained *(Morales, supra,* p 58), "a suspect may be detained upon reasonable suspicion for a reasonable and brief period of time for questioning under carefully controlled conditions protecting his Fifth and Sixth Amendment rights." Holding that the police were justified in detaining and questioning defendant, the Court of Appeals observed that "The scope of the authority to question is limited to those persons reasonably suspected of possessing knowledge of the crime under investigation in circumstances involving crimes presenting a high degree of public concern affecting the public safety." *(Morales, supra,* pp 64–65.) Thus, relying upon a fusion of heterogeneous factors, the Court of Appeals sought to recognize the conduct of the police as lawful. (Cf. *People v Rivera,* 14 NY2d 441.) On appeal, the Supreme Court refused to "disturb the determination of the trial court, affirmed by the New York appellate courts, that Morales' confessions were voluntarily given," emphasizing that Morales' trial took place prior to *Miranda v Arizona* (384 US 436), and "the totality of the circumstances surrounding the confessions shows that the confessions were voluntary, not coerced." *(Morales v New York,* 396 US 102, 104.) Nevertheless, the Supreme Court, finding that the record did not "squarely and necessarily present[s] the issue and fully illuminate[s] the factual context in which the question arises" concerning "the legality of custodial questioning on less than probable cause for a full-fledged arrest," chose not to grapple with the question at that time *(Morales v New York, supra,* pp 105–106) but instead remanded the case for an evidentiary hearing at which "the State may be able to show that there was probable cause for an arrest or that Morales' confrontation with the police was voluntarily undertaken by him or that the confessions were not the product of illegal detention." It should be noted that, at the evidentiary hearing on remand, the trial court in addition to finding probable cause for defendant's detention and consent on his part to be detained (with both of which findings on the record before us I disagree), determined that "the detention of the defendant was not illegal" and that "the actions of the police in temporarily detaining the defendant for questioning, even assuming that they lacked probable cause for an arrest, was an appropriate and reasonable exercise of the police power justified by the seriousness of the crime and the manifest public interest in solving it." On the present review of this record, under the totality of the circumstances herein considered by the trial court, and in view of the Court of Appeals previous holding herein, I am constrained to conclude that it was indeed reasonable for the police, even absent probable cause or consent of defendant to be detained, to briefly detain him for questioning. The record also demonstrates, as the Court of Appeals had concluded by affirming the conviction in its previous review of the case *(Morales, supra),* that defendant's rights under the Fifth and Sixth Amendments in terms of the existence of the law prior to *Miranda (supra)* were not violated. The cases cited in the dissent *(Brown v Illinois,* 422 US 590; *People v Martinez,* 37 NY2d 662) are not within the framework of the inquiry delineated by the Supreme Court in the instant case. The remaining issue for this court's present consideration, upon rejection of the findings of probable cause or consent to detention, is whether the *temporary detention* of defendant *for questioning* on less than probable cause for a full-fledged arrest was legal. The Court of Appeals held that, under the circumstances of this case, the brief detention of defendant did not amount to an arrest *(Morales, supra,* p 59). In the cases cited in the dissent the following issues are present: Where an *arrest* is illegal *(Brown, supra,* p —; p 4938) were statements thereafter obtained nevertheless

admissible? Where a stop is illegal and taints an *arrest (Martinez, supra,* p 670), were statements and physical evidence thereafter obtained admissible? Neither of these issues is the issue before us now, and therefore the cases cited are inapposite. Accordingly, I concur for affirmance based on the reasons set forth above. Murphy, J. (dissenting). After deliberately avoiding the question when this very case was before it *(Morales v New York,* 396 US 102), the United States Supreme Court has now definitively ruled against the People's position on the only viable issue still remaining in the proceeding. Accordingly, I find no basis for affirming defendant's conviction, or the order on appeal since it rests, in substantial part, on the now rejected hypothesis. The specific matter before us for review is the correctness of the decision below, following a postconviction hearing mandated by the Supreme Court *(Morales v New York, supra),* declaring constitutionally admissible into evidence certain confessions made by the defendant which were used against him in a trial and resulted in his conviction for felony murder. At approximately 3:00 A.M. on October 4, 1964, Correction Officer Lionel Wales was entertaining some guests in his 11th-floor apartment at 700 East 156th Street in the Bronx (a 21-story building containing some 120 dwelling units), when he heard a woman screaming. He went into the hallway to investigate and heard someone running down the stairs several floors below; and then the closing or slamming of a door. Meanwhile, one of his guests pushed the elevator button and brought it to the eleventh floor. A tenant named Addie Brown was found therein, bleeding profusely from 31 stab wounds. She died shortly thereafter without naming or describing her assailant. An intensive police investigation, involving approximately a dozen officers, followed. Within the following week the police ascertained, *inter alia,* that the Morales family (Mrs. Morales, defendant's two brothers and a sister-in-law) lived in Apartment 3B of the same building and that said apartment was a suspected location for narcotics violations; defendant, who was a frequent visitor to the apartment was an addict with a criminal record which included nonviolent narcotic offenses; and a young boy claimed to have seen someone who looked like (but was not) one of defendant's brothers sitting on a bench outside the premises where the murder occurred at about 3:20 A.M. on the critical morning. As part of the exhaustive investigation, the police "rounded up" 17 addicts on October 10, 1964, and charged them with loitering for the purpose of using or possessing a narcotic drug. In order to dispel any notion that appellant was the victim of an illegal dragnet (cf. *Davis v Mississippi,* 394 US 721), the use of the word "roundup" at the trial was explained at the posttrial hearing below as stemming from the belief of the special squad investigating the Brown case that criminal activity was occurring in their presence. This assertion taxes credulity, since it appears that the addicts were questioned only about the murder and then released without even being fingerprinted. The impact of these mass detentions had their apparently intended effect, since the continuous police presence was interfering with the normal operations of the several "shooting galleries" in this narcotic infested neighborhood. On the same day (i.e. Oct. 10) a three-man delegation of "junkies" headed by one Vincent Velez, a 44-year-old unemployed addict with a criminal record, went to the 42nd Precinct and reported that defendant, who always carried a knife, had not been seen since the lethal assault. Velez also volunteered having seen appellant employ the weapon in a street incident; and opined that defendant was Addie Brown's killer. On October 12, the police informed Mrs. Morales that they wanted to see her son Melvin. She thereupon stated, for the first time, that appellant had been in her apartment at the critical

time. According to Mrs. Morales, she received a telephone call from defendant on October 13, informed him that Officer Carroll (whom defendant knew) wanted to speak to him and asked him to come to her beauty parlor. At the postconviction hearing defendant denied having any advance knowledge that the police would be at the shop. In any event, the police were in the area of the beauty shop when defendant arrived at about 8:00 P.M. on October 13 by taxicab and he was immediately taken into custody. While there is some dispute as to whether force was applied, it is clear that defendant was not free to leave and that Mrs. Morales was told she could not speak to her son. Defendant was then taken to the station house and (though the instant "seizure" occurred before the landmark opinion in *Miranda v Arizona,* 384 US 436, was handed down) informed that he had a right to remain silent, to have a lawyer present and that any answers he gave could be used against him. Approximately 15 minutes later, defendant admitted killing Addie Brown; and thereafter reiterated his confession several times. Appellant was thereafter convicted by a jury of felony murder and sentenced to life imprisonment. This court affirmed said conviction without opinion. *(People v Morales,* 27 AD2d 904.) At the trial and in the original appeal to this court, the only issues raised concerned the voluntariness of the confession and the alleged denial of access to family during the "accusatory stage" (see *Escobedo v Illinois,* 378 US 478). In the Court of Appeals appellant, for the first time, raised a Fourth Amendment issue, contending that there was no probable cause for his seizure and detention and, therefore, his confession should have been suppressed as an inadmissible fruit of illegal police action. The Court of Appeals unanimously affirmed the conviction. *(People v Morales,* 22 NY2d 55.) The majority opinion (a) "conceded that the apprehending detectives did not have probable cause to justify an arrest of defendant at the time they took him into custody" and (b) held that "the record does not support a finding that defendant consented to his detention and questioning." *(Id.,* p 58.) However, the court rejected defendant's Fourth Amendment claim on the ground that, under the "exceptional circumstances of this case", he had not been unreasonably seized and questioned. Chief Judge Fuld concurred in the result "but solely on the ground that the record established that defendant waived his constitutional rights and acquiesced in his being interrogated by the police at the police station." *(Id.,* p 65.) The Supreme Court granted certiorari. *(Morales v New York,* 394 US 972.) After reviewing the full record on appeal the court found the confession to have been voluntary and recognized the novelty of the question decided by our Court of Appeals, but decided "not to grapple with the question of the legality of custodial questioning on less than probable cause for a full-fledged arrest." Instead, it remanded the case to give the State "an opportunity to develop in an evidentiary hearing the circumstances leading to the detention of Morales and his confession [and] to show that there was probable cause for the arrest or that Morales' confrontation with the police was voluntarily undertaken by him or that the confessions were not the product of illegal detention." *(Morales v New York,* 396 US 102, 105–106.) A hearing pursuant to said mandate was held in June, 1970, at which the original record was received in evidence and additional testimony taken. In an opinion filed almost a year later, the Trial Judge found that there was probable cause for defendant's arrest, that defendant voluntarily acquiesced in his confrontation with the police and that the confession was not the product of an illegal detention. The court then concluded with the assertion that, even if all three of the above-mentioned factors were absent, the detention of Morales was "an appropri-

ate and reasonable exercise of the police power justified by the seriousness of the crime and the manifest public interest in solving it" and therefore "the confessions were not the product of a detention that was illegal or violative of defendant's Fourth Amendment rights." My difficulty is that I find nothing in the now expanded record below to support a conclusion different from that reached by the Court of Appeals on the initial appeal, i.e., that there was insufficient probable cause to justify defendant's arrest and that defendant did not voluntarily acquiesce in his confrontation with the police. This conclusion is pointedly substantiated by the testimony of Detective Carroll at the trial and postconviction proceeding. When pressed about the state of his personal knowledge at the time he took the defendant into custody, Carroll, at the trial, was asked if appellant was a suspect at the time he was sought for questioning, and replied that "everybody is a suspect." Defense counsel then inquired as to whether Carroll had any idea that appellant was "possibly connected in one way or other with that homicide" and he responded "Not particularly." At a later point in his testimony, Carroll acknowledged that when appellant was apprehended he (Carroll) "didn't have anything against him that would definitely pin him to the homicide." When asked if he suspected that appellant was the killer, Carroll answered, "Truthfully, no, I was dubious." At the postconviction hearing Carroll unconvincingly tried to explain the meaning of his damaging trial admissions as follows: "Q. Now, on the one side of the coin, then, I take it, that your answer at the trial indicating you didn't have the legal proof to convict him, is that a fair way to put it? A. Yes, sir. Q. But * * * A. I would say that I didn't know over and above and beyond a shadow of a doubt that he had done this thing." In sum, the record discloses that appellant's arrest was part of a broad and generally unfocused murder investigation. The police desire to question defendant and his ultimate seizure and detention was grounded on mere suspicion which never rose to the level of probable cause. Nor can the determination below be sustained on a finding that defendant's confrontation with the police was voluntarily undertaken. Initially, it is noted that the postconviction hearing produced no significant additional proof on this issue; and it has already been rejected by six of the seven Judges of the Court of Appeals. *(People v Morales, supra,* p 58.) At best, defendant agreed to speak to the police at his mother's place of business. No evidence was adduced to support a finding that he agreed to be taken to the station house or to be held there against his will. This, then, leaves us with the only remaining issue, viz., whether evidence obtained from a person detained for custodial questioning on a factual predicate not amounting to probable cause for a traditional arrest is constitutionally admissible. But all debate on that provocative question has now been foreclosed by the very recent authoritative holdings in *Brown v Illinois* (422 US 590); and *People v Martinez* (37 NY2d 662). In *Brown,* the defendant was arrested without probable cause and without a warrant in connection with a homicide investigation and given the full *Miranda* warnings. Within two hours of his illegal arrest he gave the first of several inculpatory statements. The Illinois Supreme Court affirmed the conviction on the ground that the *Miranda* warnings broke the causal connection between the illegal seizure and the giving of the statements. The Supreme Court reversed the Illinois judgment and rejected the per se rule adopted by the State Court because "the exclusionary rule * * * when utilized to effectuate the Fourth Amendment, serves interests and policies that are distinct from those it serves under the Fifth." *(Brown v Illinois,* 422 US 590, 601, *supra.)* Explaining and quoting from its prior decision in *Wong Sun v United States* (371 US 471,

486), the court ruled that a confession obtained as a result of a detention on less than probable cause would not be admissible unless it " 'was "sufficiently an act of free will to purge the primary taint of the unlawful invasion" ' ". *(Brown v Illinois,* p 598, *supra.)** Among the facts to be considered in deciding such "free will" issue, the court listed, in addition to the *Miranda* warnings, "The temporal proximity of the arrest and the confession, the presence of intervening circumstances * * * and, particularly, the purpose and flagrancy of the official misconduct". (Id., p 603.) *Brown* has already been implemented by our Court of Appeals in *People v Martinez* (37 NY2d 662). In that case an automobile in which Martinez was a passenger was illegally stopped. When the driver made a "quick" motion toward the glove compartment, a police officer opened the door, observed a gun on the floor and arrested the vehicle's occupants. About an hour later, after *Miranda* warnings were given, Martinez was questioned by several detectives (who, unknown to the arresting officers, had independent evidence linking defendant thereto) about a robbery and homicide which had occurred six days earlier; and he made admissions which led to the discovery of certain physical evidence. The statements made and the objects thereafter seized were admitted into evidence at his trial and he was convicted of felony murder. The court, though divided over another issue, unanimously agreed that the admissions were properly received because of sufficient intervening circumstances to break the causal chain between the unlawful police action and the subsequent interrogation. But unlike *Martinez,* we have no such intervening circumstances here. Moreover, and further distinguishing this case from *Martinez,* in the case at bar Morales, who confessed within 15 minutes after his arrival at the station house, was charged with and convicted of the very crime for which he was illegally seized and detained. (Cf. *People v Ingle,* 36 NY2d 413.) In short, the connection between defendant's arrest and the challenged confession was not sufficiently attenuated to be purged of the primary taint. In light of the foregoing, and since I find no legal justification on the law or on the facts for not applying the exclusionary rule in the instant case, I vote to reverse the order appealed from and to dismiss the indictment.

---

* Since the decision in *Brown* merely clarifies principles previously declared in *Wong Sun,* there is no room for argument that *Brown* is not retroactive. (Cf. *United States v Peltier,* 422 US 531.)