Ormand N. Gale, J.
The defendant is charged in the *750 pending indictment with robbery in the first degree; robbery in the second degree; and criminal possession of a weapon, all arising out of events occurring on February 8, 1975. The defendant moves to suppress identification testimony to be offered at the trial on the ground that he was previously photographed illegally and the subsequent identification made by the victim in the present case was the result of that illegal picture and should be suppressed as "fruit of the poisonous tree” (Wong Sun v United States, 371 US 471).
The chronology is as follows: The defendant was employed at the Red Barn Restaurant, 1514 Erie Boulevard, East in the City of Syracuse up until approximately June 1, 1974. On June 15, 1974, there was a theft at the Red Barn. On the day following the robbery, a police officer, who was unacquainted with the case, read the original police report. Seeing the defendant’s name listed as an employee, he picked him up, had him photographed and taken to the Red Barn. He was positively ruled out as a suspect by eyewitnesses at that time. Hence, no arrest was made.
Eight months later the defendant was charged by Indictment No. 75-230 with the crimes enumerated above. The victim went to police headquarters and identified the defendant by the photograph taken on June 16, 1974. This identification was made just prior to February 4, 1975.
By memorandum decision of this court dated December 23, 1975, the court directed a hearing so a determination could be made as to whether or not the photographic identification should be suppressed. Subsequently, at the People’s request, this court granted a reargument of the defendant’s motion. The reargument took place, and by a memorandum order dated April 15, 1976, this court held that the taking of the photograph by the police officer, in this particular situation, was a violation of the defendant’s constitutional rights. We held that a hearing should still be held before this court so the court could explore all the facts and circumstances surrounding the taking of the mug shot and the alleged identification of the defendant by the victim. The People were to be given the opportunity to show that the "taint” could be attenuated, that the defendant’s identity could be discovered through other police efforts, or that the prosecution could prove to the court’s satisfaction that there was an act of consent given by the defendant to the taking of the photo *751 graph. (See Smith v United States, 324 F2d 879; McLindon v United States, 329 F2d 238; People v Mendez, 28 NY2d 94.)
Once again, and by letter memorandum of October 1, 1976, the People asked for a "clarification of the issues presented in the case at bar as well as a redetermination of the nature of the violation, if any, in regard to the photograph of defendant taken during an earlier investigation of a crime unrelated to the one at bar.”
The court has made a complete review of this matter and of the cases pertinent thereto, which included a reading of the minutes of the preliminary hearing and the Grand Jury minutes upon which the indictment was based.
The factual pattern in this case as shown by the above indicates that on February 8, 1975, one Thomas J. Halpin was at the Crouse Irving Hospital parking lot at about 10:15 p.m. when he was approached by two black males. Mr. Halpin was the lot attendant. While Halpin was counting the day’s receipts the door was broken down by two black males, the larger of whom had a knife in his hand. After they grabbed up the money, the smaller of the two said, "O.K. Johnson let’s get out of here. Come on Johnson, let’s get out of here.” On cross-examination it was brought out that the victim, at the Public Safety Building, looked at a couple of books with pictures in them and found a picture and identified it as the male referred to as Johnson. There was no name on the front of the picture, but when the back of the picture was flipped over his name was on the back. He made the identification on the night of the robbery. The exact words of the victim to the police officer who showed him the photograph were, "That’s him.” Again, referring to the police officer, he said, "He was sitting like she is away from me. He wasn’t paying attention because I looked through a number of pictures.” Halpin also identified the defendant Aaron Johnson at a preliminary hearing as one of the two black males.
The Grand Jury minutes are consistent with the preliminary hearing on the direct examination of the victim. There is one additional fact. The Grand Jury minutes indicate that the two black males did not have any masks on; they had stocking caps but they were not pulled over their faces.
As previously indicated, the defendant is moving for suppression of the witness’ testimony on the ground that it, "[w]as obtained as a result of other evidence obtained in a manner described in subdivisions one, two or three of § 710 of *752 the Criminal Procedure Law” (CPL 710.20, subd 4). Subdivision 1 of that section provides that evidence may be suppressed when it, "[cjonsists of tangible property obtained by means of an unlawful search and seizure under circumstances precluding the admissibility thereof in a criminal action against such defendant”.
The defendant is thus contending that the witness’s testimony was obtained as a result of an earlier illegally seized photograph of the defendant, the mug shot picture. This is commonly known as the "fruit of the poisonous tree” doctrine. If the defendant was illegally detained, the photograph was illegally seized from him.
We must start with the principle enunciated in People v Kreichman (37 NY2d 693, 698): "The protection of personal privacy, not property rights, is the primary object of constitutional limitations on search and seizure.”
The only facts given to this court relative to the antecedent crime were as follows: The defendant’s name was known to a police officer who did not take part in the actual investigation of the robbery at the Red Barn. The defendant was summoned to police headquarters where the photo in question was taken. The defendant was taken to be viewed by the victim. He was ruled out as a suspect, and no arrest was made. It must be said, therefore, that two factors make this photograph illegal: It was not taken incidental to an arrest, lawful or otherwise; the police officer did not have probable cause to believe that this defendant committed the crime.
In United States v Edmons (432 F2d 577, 585) the court stated: " 'A ruling admitting evidence in a criminal trial * * * has the necessary effect of legitimizing the conduct which produced the evidence,’ and 'Courts which sit under our Constitution cannot and will not be made party to lawless invasions of the constitutional rights of citizens,’ Terry v. Ohio, supra, 392 U.S. at 13, 88 S. Ct. at 1875.”
This court is of the opinion that when the police, without probable cause and not incidental to an arrest, detain and photograph an individual it is a deliberate violation of the Fourth Amendment. The situation is even more egregious when that photograph becomes a permanent mug shot. The sole purpose in that case is to confront present and future victims with the photograph. Such action constitutes a clear invasion of the privacy of a defendant and is also in violation *753 of the New York statute governing the taking of photographs and fingerprints.
Fingerprints and photographs can only be taken pursuant to statute. (Pitler, NY Grim Prac Under the GPL, § 2.40.) GPL article 160 provides for the mandatory and the permissive taking of fingerprints and photographs. At no place in this article is there any authority for taking and retaining the photograph of an individual without probable cause or arrest. All fingerprinting and photographing must be done where a valid arrest has been made, not merely for investigatory purposes.
The People have brought the court’s attention to the recent case of People v Lee (84 Misc 2d 192). In that decision (p 195), the court quoted the following language from Davis v Mississippi (394 US 721): "The majority, in pointing to the significance of the prints, noted (p 723) that 'the victim did not identify petitioner as her assailant at any of [these] confrontations.’ Thus, the fingerprints taken from the defendant Davis during his unlawful detention became the only significant proof on the issue of identification. It was the evidentiary link between the defendant and the crime.” The court in Lee continued to say (pp 195-196): "But Davis is clearly distinguishable from the case at bar. Here, the unlawful detention led to the arrest of the defendant — not to evidence of his guilt. An arrest is not evidence and is not destructive of the defendant’s presumed innocence. It is merely a vehicle for the ultimate trial of the substantive issues.”
The holding in the Davis case was actually two pronged. The first attack on the conviction was that the fingerprints were admitted as part of the evidence at trial over petitioner’s timely objections. This was commented upon in the Lee decision. However, in the Davis case the Supreme Court went on to say (pp 724-725): "We turn then to the question whether the detention of petitioner during which the fingerprints used at trial were taken constituted an unreasonable seizure of his person in violation of the Fourth Amendment.” (Emphasis added.)
And finally, the court used the following language (pp 726-727): "It is true that at the time of the December 3 detention the police had no intention of charging petitioner with the crime and were far from making him the primary focus of their investigation. But to argue that the Fourth Amendment does not apply to the investigatory stage is fundamentally to *754 misconceive the purposes of the Fourth Amendment. Investigatory seizures would subject unlimited numbers of innocent persons to the harassment and ignominy incident to involuntary detention. Nothing is more clear than that the Fourth Amendment was meant to prevent wholesale intrusions upon the personal security of our citizenry, whether these intrusions be termed 'arrests’ or 'investigatory detentions.’ ” Certainly where a defendant is not arrested, but is photographed only in the course of an investigation, his constitutional rights attach at the time he is taken to headquarters. We therefore hold, that in the first instance, the defendant’s constitutional rights were violated when the photograph was taken.
Having thus determined the threshold problem, we are then concerned with whether or not this prime illegality carried over to the identification made in the present robbery case.
The District Attorney cites Smith v United States (324 F2d 879, supra) as upholding the rights of the People to use the defendant’s mug shot in the case at bar, even though the photograph at the time it was taken violated the defendant’s Fourth Amendment constitutional rights. In the Smith case confessions were received from two defendants in which they implicated a third man called Holman. The confessions were ruled inadmissible as having been taken during the period of illegal detention. The court held, however, that the fact that Holman was identified as a witness to the crime as part of the confessions could be used by the People and it developed that Holman’s testimony was a prime factor in the People’s case against the two defendants.
The People have cited other cases, and brought the court additional decisions bearing on the questions involved, but the court finds them distinguishable on their facts. The question was also raised with regard to section 79-4 of the new Civil Rights Law and the antecedent statute inferring that the burden was upon the defendant to demand the return of the photograph. The court feels that this section of the Civil Rights Law provides a mechanism whereby a defendant who has been arrested and then cleared of criminal charges can get his fingerprints and photo back. It was not meant to apply to a photograph illegally seized, but to items properly taken in the course of events, the continued holding of which by the police would not be proper where the defendant has been cleared of such charges.
The nitty gritty of the matter is whether or not the identifi *755 cation of the defendant was obtained by "direct exploitation of the original illegality so that the 'primary taint’ continued and persisted.” (People v Scharfstein, 52 Misc 2d 976.) The Smith case (supra) turned on the question of whether or not the testimony of an eyewitness or factual witness should be excluded because the witness’ identity was discovered as the result of disclosures made by an accused during detention violative of subdivision (a) of rule 5 of the Federal Rules of Criminal Procedure, (Scharfstein, supra, p 984). We are not here concerned with that state of facts. In our situation, the question is whether or not the victim’s identification testimony of the defendant should be suppressed because the identity of the defendant was discovered solely by means of the use of a mug shot, illegally taken, and illegally retained in the police files. We believe the answer should be in the affirmative.
Consequently, we again conclude and direct that a hearing be held to determine not only the consent question, but to allow proof as to whether defendant could have been connected to the crimes charged independently of the mug shot identification. The hearing will also deal, in the alternative, with allegations of impermissibly suggestive procedures, and their possible prejudicial effect.