UNITED STATES, Appellee,

v.

Private E–1 Cameron SPENCER, SSN 051–58–1995, United States Army, Appellant.

SPCM 14953.

U. S. Army Court of Military Review.

26 March 1981.

---

**540**

Colonel Edward S. Adamkewicz, Jr., JAGC, Lieutenant Colonel John F. Lymburner, JAGC, Major Elliot J. Clark, Jr., JAGC, and Captain James A. McAtamney, JAGC, were on the pleadings for appellant.

Colonel R. R. Boller, JAGC, Major Ted B. Borek, JAGC, Captain Paul G. Thomson, JAGC, and Captain Michael C. Chapman, JAGC, were on the pleadings for appellee.

Before MITCHELL, DRIBBEN and WATKINS, Appellate Military Judges.

## OPINION OF THE COURT ON RECONSIDERATION

PER CURIAM:

On its own motion, this Court has reconsidered its decision in this case dated 27 February 1981. The following decision, which is consistent with but somewhat more detailed than the earlier one, is substituted therefor.

Contrary to his pleas, appellant was convicted by a military judge sitting as a special court-martial of larceny, unlawful entry, and breaking restriction in violation of Articles 121 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 921 and 934 (1976), respectively. The approved sentence provides for a bad-conduct discharge, confinement at hard labor for four months and forfeiture of $299.00 pay per month for five months. The pertinent part of the evidence is summarized as follows:

Army Investigators Vogel and Paris appeared at appellant's billets during the course of an investigation into the larceny of stereo equipment. Because appellant's name was the first of five mentioned in a statement by the owner of the stolen property, it was determined he should be interviewed concerning the larceny. Appellant was asked if he would accompany the investigators back to their office for questioning. Appellant unequivocally agreed.[1] Appellant was asked if he wanted to drive his car to the Provost Marshal's office. He declined, saying that he did not own an automobile. He was then taken to the office in the agent's car. The agents did not frisk or handcuff him or forbid him to leave.

Upon arriving at the Provost Marshal's office, appellant was advised of his rights required by Article 31, Uniform Code of Military Justice, 10 U.S.C. § 831, utilizing DA Form 3881 (Rights Warning Procedure/Waiver Certificate). In signing the form appellant signified that he understood his rights, that he did not want an attorney, and that he was willing to discuss the offenses under investigation and was willing to waive these rights. In his written statement he admitted unlawfully entering the barracks' room and stealing the stereo turntable. During the two-hour stay appellant was never under guard and at various times was left unattended in the waiting room.

Citing *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979),

---

1. At the time, appellant was under restriction to his battery area as a result of nonjudicial punishment pursuant to Article 15, Uniform Code of Military Justice. Investigator Vogel was required to sign the Charge of Quarters log to temporarily release appellant from this restriction in order that appellant could accompany him to the Provost Marshal's office.

trial defense counsel objected to the admission of the Rights Warning Procedure/Waiver Certificate and the sworn confession arguing, in part, that they were the product of an illegal apprehension or detention. The military judge overruled the objections and specifically found that the accused voluntarily accompanied the investigators for questioning and was therefore not illegally detained or apprehended.[2] The appellant renews this contention before this Court.

Not every encounter between a police officer and an individual constitutes a "seizure" involving protections secured by the Fourth Amendment. *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); *United States v. Middleton*, 344 F.2d 78, 83 (2d Cir. 1965); *United States v. Glover*, 372 F.2d 43, 46, n.4 (2d Cir. 1967). *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). A seizure, within the meaning of the Fourth Amendment, occurs only if, "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall, supra*, 446 U.S. at 554, 100 S.Ct. at 1877; *Terry v. Ohio*, supra, 392 U.S. at 19, n.16, 88 S.Ct. at 1879 n.16.

In *Mendenhall*, Mr. Justice Stewart writing the lead opinion, held that an accused, who was stopped and briefly questioned in an airline terminal by two Drug Enforcement Administration (DEA) agents, was not "seized" within the meaning of the Fourth Amendment.[3] In reaching the conclusion that the encounter was not a "seizure" Mr. Justice Stewart noted that nothing in the record suggested that the accused "had any objective reason to believe that she was not free to end the conversation in the [airport] and proceed on her way." *United States v. Mendenhall, supra*, 446 U.S. at 555, 100 S.Ct. at 1878. Circumstances which would tend to suggest a seizure include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id.* (Citations omitted.)

In *Dunaway v. New York, supra,* the Supreme Court reached a different result, holding that an encounter where the accused was involuntarily detained and taken to the police station for custodial questioning amounted to an illegal seizure. However, the facts are distinguishable. In *Dunaway* police detectives were ordered to "pick up" the accused and "bring him in" for questioning. The accused was driven to the police headquarters, advised of his rights as required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1965). Although not told that he was under arrest, the Court found that he would have been physically restrained if he had attempted to leave.[4]

In *People v. Morales*, 22 N.Y.2d 55, 290 N.Y.S.2d 898, 238 N.E.2d 307 (1968) the New York Court of Appeals upheld a simi-

---

2. The military judge also found that the accused's pretrial statement was voluntarily given after he was properly warned of his rights.

3. Mr. Justice Stewart was joined in his opinion by Mr. Justice Rehnquist. In a concurring opinion, Mr. Justice Powell, joined by the Chief Justice and Mr. Justice Blackmun, concluded that the question of whether the DEA agents "seized" the accused within the meaning of the Fourth Amendment should not be reached because that question was not considered by the lower courts. For the purpose of the opinion the three Justices assumed that the initial encounter was a "seizure," but held that the encounter constituted a reasonable investigative stop citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct.

1868, 20 L.Ed.2d 889 (1968). Mr. Justice White in a dissenting opinion, in which Justices Brennan, Marshall and Stevens joined argued that the proper course was to remand the case to the lower courts for an evidentiary hearing on the question of whether a "seizure" occurred.

A majority of the Court agreed that the accused voluntarily consented to accompany the DEA agents to their private office for questioning and, later, to submit to a strip search of her person. The search revealed heroin.

4. Subsequent statements and sketches given by the accused were found to be the product of the accused's illegal seizure.

lar detention for custodial questioning. There the accused was a prime suspect in a murder investigation. The police attempted to locate him through his mother. When the accused later contacted her, she informed him that the police desired to question him. He agreed to meet them at her place of business. He subsequently appeared and was taken down to police headquarters, advised of his rights, and within 15 minutes confessed to the murder. On certiorari, the Supreme Court, noting its "disdain for custodial questioning without probable cause to arrest," remanded for further factual development. *Morales v. New York*, 396 U.S. 102, 104–105, 90 S.Ct. 291, 24 L.Ed.2d 299 (1969). A subsequent hearing established that the accused had voluntarily consented to accompany the police, and the New York Court of Appeals agreed. *People v. Morales*, 42 N.Y.2d 129, 137–138, 397 N.Y.S.2d 587, 366 N.E.2d 248, 252–253 (1977).[5]

 From these cases it is clear that not every instance where a person agrees to a police request to accompany them for questioning is a "seizure" within the meaning of the Fourth Amendment. Where the decision to accompany the police officers is voluntary and the accused is free to terminate the questioning and proceed on his or her way at any time, then it cannot be said that a "seizure" has occurred.

On the facts of this case, we find that no "seizure" of the appellant occurred. The investigator's conduct was not coercive or physically threatening. No weapons were displayed, nor was the appellant handcuffed or restrained in any manner. The appellant was not told that he was under arrest or being detained for questioning, but instead was asked if he would accompany the investigators to the Provost Marshal's office. Appellant was even asked if he wanted to drive his own car to the Provost Marshal's office.

Once at the Provost Marshal's office appellant freely waived his rights under Article 31, UCMJ, and cooperated in the questioning. At times the appellant was left unguarded in a waiting room. Although not specifically told so, appellant acknowledged that he knew that he was free to leave.[6] In short, we find nothing in the record to suggest that the appellant did not believe that he was free to accept or decline the invitation to go to the Provost Marshal's office for questioning and, once there, to terminate the questioning and depart at will.

Accordingly, the findings of guilty and the sentence are affirmed.

---

5. The Supreme Court in *Dunaway v. New York*, distinguished the contrary holdings in *Dunaway* and *Morales* on this basis. 442 U.S. at 205, n.3, 99 S.Ct. at 2252 n.3.

6. Appellant later stated that had he left, he thought they "probably" would have come back and got him.