Jasen, J.
This case is here for the second time. In the early morning hours of October 4, 1964, Addie Brown was viciously stabbed to death in the elevator of her Bronx County apartment building. There were no eyewitnesses to the murder and an extensive police investigation failed to uncover any direct evidence as to the identity of the killer. Yet the police did learn that Melvin Morales, a known narcotics addict, had frequented the building, had been inside the building at the time of the homicide, and had not been seen since the murder. Morales’ mother was a tenant in the building and Morales sojourned with her from time to time. Further, the building was the scene of frequent narcotics activity in which Morales allegedly participated. The police attempted to contact Morales through his mother. On October 13, 1964, nine days after the killing, Mrs. Morales received a telephone call from her son. She informed him that the police desired to question him. Morales agreed to appear at his mother’s beauty parlor, her place of business. The police, who had seen previous efforts to contact Morales through his mother fail, had staked *132 out the premises. When Morales arrived, the police advised him that they desired to speak to him. Morales replied, "Yes, I know.” He was placed in a police car and driven to the precinct house. At the station house, Morales was informed of his constitutional rights and was questioned. Within 15 minutes, he confessed to the murder.
Defendant was convicted, after a jury trial, of murder in the first degree. The Appellate Division affirmed his conviction (27 AD2d 904) and a further appeal was taken to our court. We sustained the conviction. It was conceded that the record would not support a conclusion that the police had probable cause to arrest defendant at the time he was taken into police custody. Further, the record on appeal did not establish that the defendant consented to being detained and questioned by the police. However, in a case of first impression, we held "that a suspect may be detained upon reasonable suspicion for a reasonable and brief period of time for questioning under carefully controlled conditions protecting his Fifth and Sixth Amendment rights.” (People v Morales, 22 NY2d 55, 64.)
This court recognized that interrogation of persons with knowledge of the facts is the principal means of solving crimes and that the public interest in bringing to justice perpetrators of serious crimes required that interrogation not be completely forbidden. It was emphasized that police inquiry must be kept within reasonable limits and that the rights of the suspect must be fully regarded. Yet, brief detention for questioning is essential to criminal investigation and a suspect, detained for questioning only, may not construe such deten? tion as constituting an arrest for, and formal charge of, criminal activity. A suspect, advised of his constitutional rights, has a clear choice. He may elect to co-operate with the inquiry or he may decline to speak. If the suspect chooses to stand on his rights, the police must release him from custody unless they have probable cause to arrest him for a specified crime.
In applying these rules to defendant Morales, we concluded that the police conduct was justified under the exceptional circumstances of the case. A brutal and heinous felony had been committed. All of the indications raised by the "checkerboard square” of police investigation pointed at the defendant. Interrogation of the defendant was the only practical investigative technique open to the police. The period of detention *133 was brief and defendant, experienced in police procedures, was fully advised of his constitutional rights.
Defendant took an appeal from our decision to the United States Supreme Court. That court elected "not to grapple with the question of the legality of custodial questioning on less than probable cause for a fullfledged arrest.” (Morales v New York, 396 US 102, 105-106.) While the court concluded that Morales’ confession was voluntary, it vacated the judgment of conviction and remanded the case for a further evidentiary hearing. "Given an opportunity to develop in an evidentiary hearing the circumstances leading to the detention of Morales and his confessions, the State may be able to show that there was probable cause for an arrest or that Morales’ confrontation with the police was voluntarily undertaken by him or that the confessions were not the product of illegal detention.” (396 US, at p 105.) In compliance with the mandate of the Supreme Court, we remitted the case to Supreme Court, Bronx County, for further proceedings. (26 NY2d 844.)
After conducting a suppression hearing, the court held that the defendant’s confessions were constitutionally admissible. The court concluded that the police did have probable cause to arrest the defendant for the murder of Addie Brown. On the issue of probable cause, the only additional proof introduced at the supplemental hearing that was not contained in the original record was that a young boy had observed the defendant sitting on a park bench in front of the apartment building shortly before the murder was committed. From this vantage point, defendant would have been able to see the deceased enter the building. The court also placed reliance upon Mrs. Morales’ false and evasive responses when questioned by the police as to her son’s whereabouts.
Secondly, the court ruled that the defendant had voluntarily acquiesced to his detention by the police. "I further find from the credible evidence that the defendant voluntarily appeared at his mother’s place of business, expected to see police officers there, and anticipated being questioned by the police about the homicide. Thus, after a conversation with his mother, during which she told him that the police wanted to speak to him, the defendant affirmatively responded that he would come over to see them. And after the defendant did appear, and the police told him they wanted to speak to him, the defendant replied that he knew they wanted to speak to him *134 and voluntarily accompanied the police officers to the station house.”
The hearing court also concluded that the confessions were not related in any way to his detention at the police station, but, rather, "constituted a voluntary unburdening of his guilty conscience.” Finally, it was held that a detention for a brief period of time for investigatory purposes did not violate defendant’s Fourth Amendment rights.
The Appellate Division, by a fractionated court, affirmed the order of the trial court. (52 AD2d 818.) Two Justices agreed fully with the opinion by Trial Term and two Justices agreed with the result but filed concurring opinions. Both of the concurring Justices agreed that the evidence adduced at the supplemental hearing, as well as contained in the entire record, was insufficient to sustain the finding of probable cause. However, one Justice took the view that the defendant had voluntarily confronted the police and, thus, the confessions were not suppressible. (52 AD2d, at pp 818-819 [Lupiano, J., concurring].) The other Justice believed that the evidence was insufficient to establish consent but was for affirmance on the authority of the prior Court of Appeals holding in this case. (52 AD2d, at pp 819-820 [Birns, J., concurring].) One Justice dissented and voted to reverse, taking the view that neither probable cause nor consent had been established and that the Court of Appeals holding on the first appeal had been undercut by Brown v Illinois (422 US 590) and People v Martinez (37 NY2d 662). (52 AD2d, at pp 821-824 [Murphy, J., dissenting].) Defendant was granted leave to appeal to our court.
We begin with the issue of probable cause. Although the hearing court concluded that the police did have probable cause to arrest Morales for the Brown murder, this finding was expressly rejected by three Justices at the Appellate Division. We, therefore, are presented by a finding by the intermediate appellate court that probable cause to arrest was lacking. The question of probable cause is a mixed question of law and fact. Determination of the facts and circumstances bearing on the issue, which hinges primarily on questions of witness credibility, is a question of fact. However, it is a question of law whether the facts found to exist are sufficient to constitute probable cause. (E.g., People v Oden, 36 NY2d 382, 384.) Where more than one inference may be drawn from the facts, the question of probable cause is primarily one of *135 fact over which our court has limited powers of review. (E.g., People v Rizzo, 40 NY2d 425, 430; People v Clements, 37 NY2d 675, 678, cert den 425 US 911; People v Alexander, 37 NY2d 202, 204.)
In this instance, we cannot conclude that the Appellate Division erred as a matter of law. The only additional evidence produced at the supplemental hearing which was not contained in the original record was that the police had been informed, prior to Morales’ detention, by a young boy that he had seen defendant outside the building shortly before the killing. Although defendant was so positioned as to permit him to see the deceased enter the building, there was no evidence that the defendant did actually remain in position, spot the deceased, and follow her into the building. Realistically appraised, the young witness’ testimony did no more than place the defendant in the vicinity of the crime. However, on the original record, his proximity to the location of the homicide had been established. When the police sought to interview the defendant, they already knew that he had been in the building at the time of the murder. Simply put, the observations of the young boy did not add to the quantum of police knowledge; his observations were cumulative of information already possessed by the police. Although there were grounds for reasonable suspicion as to the defendant’s involvement with the crime, there was no reasonably trustworthy information sufficient to warrant a prudent man to believe that defendant had committed the crime. (E.g., Henry v United States, 361 US 98, 102; Draper v United States, 358 US 307, 313; People v Oden, 36 NY2d 382, 384, supra.)
Having concluded that probable cause to arrest was lacking, we adhere fully to the views articulated in our prior opinion in this case. Law enforcement officials may detain an individual upon reasonable suspicion for questioning for a reasonable and brief period of time under carefully controlled conditions which are ample to protect the individual’s Fifth and Sixth Amendment rights. For a full exposition of our views, reference is made to our earlier opinion. (People v Morales, 22 NY2d 55, supra.) At this stage of the case, our attention is directed to the argument of the defendant, accepted by the dissenter at the Appellate Division, that the vitality of the Morales holding has been undercut by Brown v Illinois (422 US 590, supra) and People v Martinez (37 NY2d 662, supra). We disagree.
*136 In the Brown case, police officers investigating a homicide had been informed that the defendant was an acquaintance of the victim. On this information, and this information only, the officers broke into defendant’s apartment, searched it, and arrested the defendant at gunpoint. The Supreme Court concluded that defendant’s subsequent confessions should have been suppressed because the confessions were obtained as a result of an illegal arrest. The court, in language relied upon by this defendant, noted that the officers were aware that they lacked a sufficient predicate for the arrest. The arrest was "investigatory” and was an "expedition for evidence in the hope that something might turn up.” (422 US, at p 605.)
The Brown case has only limited relevance to the case before us. Of course, if the police conduct here was illegal, then defendant might cogently contend that, under Brown and Wong Sun v United States (371 US 471), the confessions of Morales should be suppressed as fruit of the poisonous tree. However, the basic distinction is that the arrest in Brown was illegal; the limited detention of Morales was not. The defendant in Brown was arrested and charged with the crime simply because he was an acquaintance of the victim. The police made virtually no investigation and had no grounds for even suspecting that the defendant was involved in criminal activity. The situation in this case is far different. Defendant was a suspect. An extensive police investigation established a "checkerboard square” of circumstantial evidence pointing directly at the defendant. (22 NY2d, at p 64.) But all investigative techniques, save interrogation, had been exhausted. Under these exceptional circumstances, given the public interest in solving a brutal and heinous crime, brief detention for questioning was permissible. We specifically noted in our original opinion that such detention would also protect "those who are able to exculpate themselves from being arrested and having formal charges made against them before their explanations are considered * * * The fact that detention is not recorded as an arrest * * * is also important.” (22 NY2d, at p 63 [citation omitted].) In short, Morales involved a brief detention for interrogation based upon reasonable suspicion, where there was no formal accusation filed against defendant, and all other investigatory techniques were fruitless. Brown, on the other hand, involved police conduct never sanctioned by any court. There was no investigation: defendant was arrested, searched and accused of crime without even a scintilla *137 of evidence casting suspicion upon him. After an hour of police custody, he admitted involvement. In essence, Brown involved an investigatory "round-up”, a technique condemned in Morales (22 NY2d, at pp 64-65) and in Davis v Mississippi (394 US 721).
People v Martinez (37 NY2d 662, supra) also involved a situation where the initial police conduct was predicated upon scanty information not even sufficient to establish grounds for suspicion. While we concluded that defendant’s subsequent confession to an unrelated crime was admissible because the confession was not the product of the illegal arrest, we took care to note that statements which are the product of "sham arrests” should be suppressed. (37 NY2d, at p 667.) It is also useful to contrast the facts in this case with those presented in People v Anderson (42 NY2d 35). In that case, defendant was brought into police headquarters as part of a roundup, without grounds for even suspicion, and was held for over 19 hours until he finally confessed. The police conduct, based upon no investigation to speak of, was egregious and well beyond the limited, brief detention for questioning based upon reasonable suspicion permitted in exceptional circumstances by Morales.
To sum up, our original view in Morales remains valid today. No case, in our court or in the United States Supreme Court, has the effect of vitiating the principle we enunciated. Actually, since Morales, our court has noted that the individual’s right "to be free from an official interference by way of inquiry” is not absolute. (People v De Bour, 40 NY2d 210, 217.) Rather, "a policeman’s right to request information while discharging his law enforcement duties will hinge on the manner and intensity of the interference, the gravity of the crime involved and the circumstances attending the encounter.” (40 NY2d, at p 219.)
One further issue remains to be discussed. The supplemental hearing did develop the record further on the issue of the defendant’s possible consent to police detention. While the original record did not support a conclusion that defendant did consent (People v Morales, 22 NY2d 55, 58, supra), the hearing court found, on the expanded record, that the defendant did voluntarily accompany the police officers to the station house. This finding of fact was accepted by at least three Justices at the Appellate Division. The record indicates a close question as to whether "consent has been voluntarily given or *138 is only a yielding to overbearing official pressure”. (See People v Gonzalez, 39 NY2d 122, 128.) The issue was, however, considered carefully by the hearing court and its finding of consent was affirmed by the Appellate Division. Although the voluntariness of the consent is open to dispute, our power to review affirmed findings of fact is limited. Since the finding of the trial court is supported by the record, we are precluded from upsetting it. (E.g., People v Paulin, 25 NY2d 445, 449-450; People v Leonti, 18 NY2d 384, 391; see, also, People v Kaye, 25 NY2d 139, 142-143.) Therefore, an alternative basis for our holding in this case is that the defendant consented to the police detention.
Accordingly, the order of the Appellate Division should be affirmed.