THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v IRVING JEROME DUNAWAY, Respondent.

Fourth Department, March 1, 1978

## APPEARANCES OF COUNSEL

*Lawrence T. Kurlander, District Attorney (Melvin Bressler* of counsel), for appellant.

*Edward J. Nowak (James Byrnes* of counsel), for respondent.

**OPINION OF THE COURT**

MOULE, J.

This is an appeal by the People from an order granting defendant's motion to suppress certain inculpatory statements and sketches made by him in which he admits his involvement in the murder of a pizza shop proprietor.

On March 26, 1971, two men entered a pizza shop in Rochester and, in the course of an attempted robbery, one of them shot and killed the proprietor. Four months later, on August 11, 1971, three police officers went to defendant's home to question him about his participation in the robbery. According to the police testimony, defendant was asked to come downtown to talk and did so voluntarily. Defendant was taken to police headquarters where he was placed in an interrogation room and given his *Miranda* warnings. He then waived his right to counsel and consented to talk to the detectives. He made an incriminating statement, which was repeated for a stenographer. He also made two sketches useful to the prosecution. The following day defendant asked to see one of the police officers and made a second more complete statement.

Defendant was indicted on two counts of murder and one count of attempted robbery. Following a hearing on defendant's motion to suppress his statements and sketches, the motion was denied. After a jury trial defendant was convicted of felony murder and attempted robbery and sentenced to a term of 25 years to life on the murder count and a maximum term of 15 years on the attempted robbery count, the sentences to run concurrently. Defendant appealed his conviction and this court and the Court of Appeals affirmed, without opinion (42 AD2d 689, 35 NY2d 741). The Supreme Court of the United States granted certiorari and thereafter vacated the judgment and remanded the case to the Court of Appeals for further consideration in light of *Brown v Illinois* (422 US 590) *(Dunaway v New York,* 422 US 1053). The Court of Appeals remitted the case to the Monroe County Court for a factual hearing on whether defendant was detained and, if so, whether there was probable cause for the detention and, if there was a detention and probable cause was not found, whether the making of the confessions and the accompanying sketches were rendered infirm by the illegal arrest *(People v Dunaway,* 38 NY2d 812, 813-814). It is from the decision and order of the County Court granting defendant's motion to suppress his statements and sketches that the People appeal.

We believe that this case is controlled by the recent decision of the Court of Appeals in *People v Morales* (42 NY2d 129) in which the court rearticulated the views expressed in its earlier *Morales* decision (22 NY2d 55) that "[l]aw enforcement officials may detain an individual upon reasonable suspicion for questioning for a reasonable and brief period of time under carefully controlled conditions which are ample to protect the individual's Fifth and Sixth Amendment rights" (42 NY2d, at p 135). " '[A] policeman's right to request information while discharging his law enforcement duties will hinge on the manner and intensity of the interference, the gravity of the crime involved and the circumstances attending the encounter' " (42 NY2d, at p 137, quoting from *People v De Bour,* 40 NY2d 210, 219).

Here, based upon information supplied to the police by an informant, who had picked out a picture of defendant from a file of photographs, the police questioned an individual who was serving time in jail and who informed them that defendant and one Adams had participated in the robbing and shooting of the pizza shop proprietor. Although this hearsay information did not constitute probable cause to arrest defendant, in our opinion, it certainly raised a "reasonable suspicion" in the minds of the police so as to warrant their detention of defendant for questioning under *Morales.*

Furthermore, the record, which includes the transcripts of both suppression hearings, shows that defendant was picked up at approximately 8:00 A.M. on August 11, 1971 at a house on Walnut Street. According to the testimony of the police officers, they approached defendant at the house and asked him if he would come downtown to talk with them. The police assert that they never touched or abused defendant and that as they drove downtown to the station, they never spoke to defendant. When defendant arrived at the police station he was placed in an interviewing room and at about 9:00 A.M. was given his *Miranda* rights. Allegedly he told the police that he understood his rights and that he consented to waive them and discuss the matter. Most importantly, defendant testified at the suppression hearing before the trial that he was not threatened or abused by the police and that the statements he made to them were voluntary.

This testimony shows that the police legally detained defendant for questioning and that such questioning was fair, reasonable, within proper limits and under carefully con-

trolled conditions which were ample to protect his Fifth and Sixth Amendment rights. Moreover, as in *Morales,* the crime committed here was a brutal and heinous felony, the period of detention was brief and defendant was fully advised of his constitutional rights. We are not dealing here with a situation where the defendant was arrested, searched and accused of a crime without even a scintilla of evidence casting suspicion upon him (see *Brown v Illinois,* 422 US 590, *supra; People v Martinez,* 37 NY2d 662). Rather, this case involves a brief detention for interrogation based upon reasonable suspicion, where there was no formal accusation filed against defendant and where great public interest existed in solving a brutal crime which had remained unsolved for a period of almost five months *(People v Morales,* 42 NY2d 129, 136, *supra).* In our opinion, the police conduct here is proper under *Morales.*

■ Further, even if we were to find that the actions of the police officers constituted an illegal detention of defendant, there was a sufficient attenuation of this primary taint to render the subsequent inculpatory statements and sketches admissible. As the Supreme Court stated in *Brown v Illinois* (422 US 590, 603, *supra)* "[t]he question whether a confession is the product of a free will * * * must be answered on the facts of each case. No single fact is dispositive." Although the court stated that the giving of *Miranda* warnings, by itself, does not always purge the taint of an illegal arrest, the *Miranda* warnings are an important factor in determining whether the confession is obtained by exploitation of an illegal arrest (422 US 590, 603, *supra).* Other factors that are relevant are the temporal proximity of the arrest and confession, the presence of intervening circumstances and, particularly, the purpose and flagrancy of the official misconduct (422 US 590, 603-604, *supra).* Defendant's testimony that he was never threatened or abused by the police and that the statements he made to them were voluntary, along with the police testimony concerning the fact that defendant was given his *Miranda* rights, lend strong support for the conclusion that defendant's confessions were the product of his free will and that the police conduct here, subsequent to defendant's initial detention, was highly protective of defendant's Fifth and Sixth Amendment rights. Moreover, the police conduct here in detaining defendant was in no manner flagrant as that in *Brown* where the defendant was formally arrested at gunpoint without probable cause and the police broke into his apart-

ment and searched it. The defendant in *Brown* was arrested and charged with the crime simply because he was an acquaintance of the victim. The police made virtually no investigation and had no grounds for even suspecting that the defendant was involved in criminal activity. Here, defendant was a suspect and the police did have a reasonable suspicion that he was involved in the crime being investigated. More importantly, defendant was never arrested or formally charged prior to his being given his *Miranda* rights. We believe that the statements and drawings made by defendant were of sufficient free will to purge the primary taint of any unlawful detention that may be said to have taken place and should not be suppressed.

Accordingly, the order granting defendant's motion to suppress should be reversed and the motion denied.

DENMAN, J. (concurring). I concur with the result reached by the majority as I believe this case is controlled by *People v Morales* (42 NY2d 129). The police were at a stalemate in their investigation of the murder of the proprietor of a pizza parlor which had taken place some months before. A previously known informant, "Sparrow", told them that while he had recently been in jail, an inmate gave him information that "Irving", also known as "Axelrod", and two others, were responsible for the pizza parlor murder. The police verified that information by interviewing the inmate. "Sparrow", who said he knew Irving, picked defendant's picture from a group of mug shots. This was the only lead the police had in furtherance of their investigation. It seems to me that failure to question defendant at that point would have been contrary to responsible police conduct.

By defendant's own testimony, he was picked up, told that he would be questioned at headquarters and was not threatened or intimidated. He was placed in a room with the interrogation officer at approximately 9 o'clock in the morning, told of the nature of the inquiry and given his *Miranda* warnings. He made an incriminating statement shortly after 10 o'clock which he testified was voluntary, and later made some sketches relevant to the crime.

These circumstances seem to me to qualify as those "exceptional circumstances, given the public interest in solving a brutal and heinous crime", under which "[l]aw enforcement officials may detain an individual upon reasonable suspicion for questioning for a reasonable and brief period of time under

carefully controlled conditions which are ample to protect the individual's Fifth and Sixth Amendment rights." *(People v Morales, supra,* at pp 135-136.)

The dissent believes *Morales* is inapplicable because the detention here was involuntary, purely investigatory and defendant was a "novice" in police procedures. In my opinion, the thrust of *Morales* is that police may have some latitude in exercising their investigatory responsibilities to solve serious crimes as long as their conduct is *reasonable* and carefully limited so as to insure a defendant's Fifth and Sixth Amendment rights. Rights protected by the Fourth Amendment are not violated until the conduct of the police becomes *unreasonable.*

I believe the circumstances of defendant's detention met those standards and therefore vote with the majority. Nevertheless, I must depart from the majority view that defendant's confession is admissible even if he were illegally detained. The fact that defendant's confession was voluntary and that his Fifth and Sixth Amendment rights were not violated is, in my view, not controlling.

If the detention of defendant was not reasonable under the rule of *Morales,* he was then the victim of an unlawful arrest in violation of the Fourth Amendment and his confession, as the product of such arrest, would have to be suppressed. Under the standards of *Brown v Illinois* (422 US 590), and *People v Martinez* (37 NY2d 662) there were insufficient intervening circumstances to attenuate the confession and remove the tainted effect of the arrest if it were found to be unlawful. (See *People v Burley,* 60 AD2d 973.)

CARDAMONE, J. (dissenting). The proprietor of a small pizza shop in Rochester was shot and killed during an attempted robbery. Several months later a police lieutenant heard a rumor from a fellow officer that an informant indicated that one James Cole was involved. The officer questioned Cole who told him that two months earlier he had been informed by Hubert Adams that his brother "BaBa" Adams and Irving, also known as "Axelrod" (no surname), were responsible for the murder. According to Cole, Hubert Adams said that he had received this information from his brother "BaBa". Rather than following up these leads either to Hubert Adams or "BaBa" Adams, the police lieutenant instead directed detectives to find the defendant, Dunaway, and bring him to police headquarters for questioning. Two plainclothes detectives,

both six feet three inches or taller and weighing in excess of 200 pounds, picked up Dunaway, a five foot seven inch 130 pound 18 year old at his home. The People stipulated that defendant was in the detectives' physical custody until he reached headquarters and that had he attempted to leave their company the detectives would have physically restrained him.

Dunaway was given the usual *Miranda* warnings upon his arrival at headquarters. Shortly thereafter he made an incriminating statement, which was repeated for a stenographer. He also made two drawings useful to the prosecution. The following day Dunaway asked to see the detective and made a second, more complete statement. Both statements and the drawings were ruled admissible and introduced into evidence at trial. Dunaway was convicted of murder and attempted robbery. This court (42 AD2d 689) and the Court of Appeals (35 NY2d 741) affirmed, without opinion.

On appeal, the United States Supreme Court (422 US 1053) remanded for consideration of whether the detention of Dunaway prior to his making the statements violated any of his rights in light of *Brown v Illinois* (422 US 590). The Court of Appeals in turn remanded the issue to Monroe County Court for a hearing (38 NY2d 812). That hearing was held and the trial court suppressed the statements and the drawings holding that the defendant was illegally detained and that there was insufficient attenuation of this primary taint to render the subsequent inculpatory statements and sketches admissible.

In *Brown v Illinois* the Supreme Court focused on a person's Fourth Amendment right to be free from an unlawful seizure. Closely to be scrutinized, therefore, must be the claim of the majority that a suspect has been briefly detained for questioning upon reasonable suspicion under carefully controlled conditions ample to protect his Fifth amd Sixth Amendment rights *(People v Morales,* 42 NY2d 129). The majority rely upon *Morales,* but there it was found that the defendant, an "experienced" 30-year-old lawbreaker voluntarily arranged to meet the police and willingly went to the police station for questioning. The "checker-board square" of police investigation in that case pointed directly at the defendant and nobody else and the investigation was complete except for interrogation of Morales. However, in the present case, the teen-aged Black suspect was a novice in matters of police procedure. The

prosecutor conceded at the suppression hearing that there was no distinction between the pickup of this defendant and an arrest, except for the absence of the word "arrest". Most important, the trial court found, and I agree, that this defendant did not voluntarily accompany the detectives to police headquarters. This small Black youth was confronted by two very large white detectives who, according to him grabbed him and took him to the police car. The detectives are not certain whether they touched him or not.

Further, here, rather than conduct a complete investigation, the police relying upon stale rumors and triple-hearsay that was over four months old when the police learned of it, seized the defendant. Such seizure clearly was solely for investigatory purposes. Even assuming that this was a detention of the kind contemplated by *Morales,* there were avenues of investigation yet unexplored, i.e., the questioning of Hubert and "BaBa" Adams which could have been easily accomplished since at least the latter was then in prison. From all these circumstances, and unlike *Morales,* it may not be said that Dunaway was briefly detained under carefully controlled circumstances. Rather, he was illegally seized, detained or arrested and his rights should not turn upon the use or failure to use the word "arrest" where that, in fact, was his status.

In my view, the majority's reliance upon *People v Morales (supra)* and *People v De Bour* (40 NY2d 210) is misplaced. It is recognized in New York that police in an encounter in a public place have authority to detain briefly and request information from citizens while discharging their law enforcement duties *(People v De Bour, supra).* This is not such a case. The majority read *Morales* to posit a broad test of reasonable police conduct under all the circumstances. Instead *Morales* sets forth a tightly drawn and carefully articulated rule limited to exceptional circumstances. In reversing the trial court's suppression order the majority extend the ambit of *Morales* beyond these established parameters and in so doing violate Dunaway's rights in light of *Brown v Illinois* (422 US 590, *supra).*

Having established the primary taint of an illegal seizure, an examination of this record demonstrates that it has not been attenuated under the criteria established in *Brown v Illinois (supra).* In order to determine whether the primary taint of the illegal seizure of the defendant has been purged, three factors in addition to the *Miranda* warnings must be

considered: the temporal proximity of the arrest and the confession, the presence of intervening circumstances and the purpose and flagrancy of the official misconduct *(Brown v Illinois,* 422 US 590, 603-604, *supra).* Dunaway's confession made within two hours was in close temporal proximity to his arrest; there is not the slightest suggestion in the record of the presence of any intervening circumstances; and, finally, the arrest or detention made here, concededly without probable cause, without a warrant and under circumstances which were clearly investigatory in nature constitutes flagrant official misconduct. The facts of this case are almost on point with those in *Brown.* There the Supreme Court held that the defendant's statements were inadmissible without regard to the nature of the crime which was, as in the instant case, murder.

Accordingly, I feel constrained to dissent and vote to affirm the order which suppressed the inculpatory statements and sketches.

MARSH, P. J., and WITMER, J., concur with MOULE, J.; DEN-MAN, J., concurs in an opinion; CARDAMONE, J., dissents and votes to affirm the order, in an opinion.

Order reversed and motion denied.