OPINION OF THE COURT
Joseph Slavin, J.
The defendant moves under CPL 440.10 (subd 1, pars [d], [h]; subd 2, par [a]; subd 4) for an order setting aside the defendant’s conviction and either dismissing the indictment or granting defendant a new trial. The defendant was previously convicted of felony murder in this court under Indictment No. 730/73 and on February 27, 1975 was sentenced to an indeterminate term of imprisonment by Honorable Hyman Barshay. He is currently serving that sentence. On appeal to the Appellate Division, Second Department, defendant’s conviction was initially set aside and he was granted a new trial (People v Wise, 60 AD2d 921). On a further appeal the Court of Appeals reversed and remitted the case to the Appellate Division (People v Wise, 46 NY2d 321).
The defendant contends that his State and Federal constitutional rights were violated and he was deprived of a fair trial, in that (a) testimony was admitted as to a statement allegedly made by him, which statement was obtained during a period of illegal custodial interrogation, and (b) the burden of proof was shifted to him when the jury was improperly instructed that "a person is presumed to intend the natural consequences of his act.” The first of these contentions was decided adversely to the defendant in the Court of Appeals (People v Wise, supra) but defendant contends he is entitled to relief because there has been a retroactively effective change in the law controlling such issues (CPL 440.10, subd 2, par [a]; Dunaway v New York, 442 US 200). The second of these contentions was not raised on appeal but defendant again *79 claims there has been a retroactively effective change in the law under Sandstrom v Montana (442 US 510).
The People contend that Dunaway should not be applied retroactively and that this court is bound by the Court of Appeals decision in People v Wise (supra). Additionally, as to defendant’s second point, the People state that defendant’s due process claims may not be raised by motion to vacate judgment (CPL 440.10, subd 2, par [c]) but should the court determine to reach the merits of defendant’s claim under Sandstrom, the judgment should not be set aside because the charge was proper under the law.
Where a major purpose of a new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in the past (Williams v United States, 401 US 646), the doctrine has quite often been applied retroactively. However, in United States v Peltier (422 US 531), the Supreme Court discussed the standards for determining whether the exclusionary rule should be applied retroactively. The court said (pp 537-538): "It would seem to follow a fortiori from the Linkletter * * * holding * * * [Linkletter v Walker (381 US 618) holding that Mapp v Ohio (367 US 643) is not to be applied retroactively] that the 'imperative of judicial intergrity’ is also not offended if law enforcement officials reasonably believed in good faith that their conduct was in accordance with the law even if decisions subsequent to the search or seizure have held that conduct of the type engaged in by the law enforcement officials is not permitted by the Constitution.” The court went on (p 542) "If the purpose of the exclusionary rule is to deter unlawful police conduct then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.” In the present case the police officers properly believed the law at the time to be that of People v Morales (42 NY2d 129). The Court of Appeals in the instant case (People v Wise, 46 NY2d 321, 330, supra) found the police conduct in taking defendant into custody fell within the prescribed limits of Morales "[s]o long as the police are solicitous of an individual’s rights, and carefully delimit the scope of the intrusion, a custodial detention predicated upon reasonable suspicion can hardly be termed 'unreasonable’ (People v *80 Morales, supra).” Dunaway (supra) reversed the holding of Morales, finding the custodial interrogation with less than probable cause (except in certain circumstances) is unconstitutional.
In the case of Stovall v Denno (388 US 293), the Supreme Court put forth the criteria guiding the resolution of the question of retroactivity. They are (a) the purpose to be served by the new standards; (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards. In Stovall, the court held that the rule requiring an attorney to be present at all stages of confrontation was not retroactive.
In each of the three areas in which a decision was applied retroactively, the principle went to the fairness of the trial (i.e., right of appeal, right to counsel, voluntariness). Here, the fairness of the trial is not under attack.
Defendant contends that Dunaway (442 US 200, supra) has been held retroactive by implication in New York. This is incorrect. As a general rule the courts decide cases according to the law as it exists on the date of the then decision (People v Reynolds, 25 NY2d 489). Defendant is not entitled to the benefit of Dunaway (supra) for at the time of the court’s decision in the normal appellate process, Dunaway was not the law (People v Reynolds, 25 NY2d 489, supra). In the cases relied upon by the defendant, Dunaway (supra) was the law at the time the appellate review took place.
This court holds that Dunaway v New York (supra) is not retroactive and that part of the defendant’s motion is denied.
The court will now consider defendant’s second contention; that the burden of proof was shifted to him when the jury was improperly instructed that "a person is presumed to intend the natural consequences of his act.”
The part of the charge that is challenged reads as follows:
"Now intent is defined as follows: 'A person acts intentionally with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct.’
"Now I will enlarge upon it in layman’s language. You can’t touch intent. You can’t photograph it. You can’t see it. It is a condition of the mind. So you have to take what the circumstances were, all the circumstances that are involved.
*81 "In the alleged confession attributed to the defendant, he gives a version. You heard the People’s version and the accomplice’s testimony. You heard his version as offered in the alleged confession, and also as I think Detective Martin testified.
"One of the things he said; he started to get up and the gun went off, and to Detective Martin, I think he said the gun had a hair trigger.
"So you take all these things into consideration. Was there time to form an intent? Was there sufficient time to think about it and form an intent, and that is what you have to take into consideration. What developed when the alleged shot was fired; the speed with which he came to the door. He saw a man. Do you accept his version, that it was a hair trigger gun, or the gun went off all of a sudden, or was there time for him to stand and reflect. Those are the things for you to consider, to formulate a decision whether or not at that time, at that moment, whether there was an intent to kill; or was there not an intent to kill. Was there an intent to inflict serious injury; was there not an intent to inflict serious injury, or did the gun go off. You have to take all that into consideration and decide what happened there in order for you to decide with respect to the question of intent. * * *
"Now with respect to the District Attorney making a request which I am also going to grant. It is a fundamental rule of evidence that a person is presumed to intend the natural consequences of his act, unless the act was done under circumstances or under conditions which preclude the existence of such an intent, and that is what I was talking about before; what you believe happened there, if it did happen there concerning this defendant, the deceased, the circumstances, what he said about it here, what he said about it when you talk about his credibility and assessing his credibility.
"You must take all those things into consideration, Ladies and Gentlemen, and that answers the question, unless you have any other question.”
In Morissette v United States (342 US 246), the Supreme Court held that a defendant’s state of mind or intent is an element of a criminal offense which cannot be taken from the trier of fact through reliance on a legal presumption of wrongful intent. The Supreme Court held in Sandstrom v Montana (442 US 510, 513, supra) that a jury instruction that " '[t]he law presumes that a person intends the ordinary *82 consequences of his voluntary acts’ ” violates the Fourteenth Amendment’s requirement that the State prove every element of a criminal offense beyond a reasonable doubt.
However, Sandstrom’s jurors were not told that they had a choice or that they might infer that conclusion. They were told only that the law presumed it. In the concurring opinion of Sandstrom (supra, p 527) the court stated: "And surely if this charge had * * * 'merely described a permissive inference,’ * * * it could not conceivably have run afoul of the constitutional decisions cited by the Court in its opinion.”
A charge may not be interpreted piecemeal. It must be read in its entirety and considered as a whole (People v Reese, 100 Misc 2d 951). Reading the charge as a whole, this court finds that the permissive nature of the charge was demonstrated to the jury, thereby not shifting the burden of proof.
The motion to dismiss based on Sandstrom (supra) is therefore denied.