■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LLOYD COLEMAN, Appellant. — Judgment, Supreme Court, Bronx County, rendered on March 23, 1979, unanimously affirmed. The case is remitted to the Supreme Court, Bronx County, for further proceedings pursuant to CPL 460.50 (subd 5). Concur — Kupferman, J. P., Markewich and Bloom, JJ.; Sandler and Silverman, JJ., concur in separate memoranda as follows:

Sandler, J. (concurring). Defendant was convicted after a jury trial of robbery in the first degree and sentenced to an indeterminate sentence of 0 to 5 years. The principal issue on this appeal concerns the denial of defendant's motion to exclude statements made by him during the course of what he claims was an unlawful detention. This issue is close and important. In the early afternoon of February 23, 1977, Jose Varela's grocery store was robbed by four youths. He recognized them as neighborhood people who had frequently been in his store over a period of years, often in the company of each other. Varela described the robbers to investigating detectives who arrived later in the afternoon. Two had distinctive physical characteristics, one with burns around the mouth and the other with badly separated teeth. The other two were described in more general terms. One of these (later identified as the defendant) had lived in a building directly across the street. During his conversation with the detectives a woman entered the store who Varela stated was the mother of the robber with the separated teeth. She in turn supplied the nickname of the robber with the burns around his mouth. She said that her son and the others might well be at her apartment, and offered to accompany the police officers to the apartment. At the apartment, the mother entered, emerged after a moment, and informed the officers that "they were all in there." In the apartment when the officers entered were six persons. Two had the previously described distinctive physical characteristics. Two others, including the defendant, corresponded to the more general descriptions that had been given. All six were taken into custody and removed to the station house. The sequence of events at the station house in some respects is not entirely clear. However, it appears that at an early point the six were photographed and their photographs included in a larger photographic display. After about an hour or an hour and a half Varela was summoned to the station house and shown the photographs. He identified four of the six, including the two with the distinctive features, and two others, including the defendant, who fit the more general descriptions. The defendant was then given his *Miranda* warnings and promptly confessed his complicity in the crime, although he attempted to minimize his participation by saying that he was not aware one of them had possessed a gun. In denying the motion to suppress this statement, the trial court did not determine whether or not there was probable cause for arresting the defendant. He concluded that at a minimum there was a reasonable basis under the then controlling authority of *People v Morales* (42 NY2d 129), for a temporary detention for investigative purposes. This basis for the trial court's determination was, of course, thereafter invalidated by the United States Supreme Court in *Dunaway v New York* (442 US 200). Preliminarily, I do not believe that the record establishes probable cause for the

arrest of this defendant, although the issue is not free from doubt. The fact that the defendant fit the general description of one of the assailants would not by itself sustain his arrest. The fact that he was in the company of two others who exhibited the distinctive features reported by the victim certainly gave some additional support for the police action, particularly in light of the information that the four robbers were commonly seen together. Nonetheless I think that the totality of the facts in possession of the police at the time the six were taken into custody fell short of the probable cause required for arrest. The situation would have been different if the police had ascertained prior to the arrest that the defendant had lived in the building directly across from the store, a significant identifying factor reported by Varela. However, the record does not disclose that the police were aware of this circumstance at the time of the arrest nor indeed when they became aware of it. The critical question then presented is whether the challenged statements represented an exploitation of the illegal arrest, or whether the statements were derived " 'by means sufficiently distinguishable to be purged of the primary taint.' " *(Wong Sun v United States,* 371 US 471, 488.) On this question, the leading authority remains *Brown v Illinois* (422 US 590). In *Brown,* the defendant had been arrested without probable cause, given the warnings prescribed in *Miranda v Arizona* (384 US 436), and thereafter made two inculpatory statements, the first within two hours after his arrest. The Illinois Supreme Court affirmed the admission of these statements into evidence on the view that the giving of the *Miranda* warnings served to break the causal connection between the illegal arrest and the giving of the statement. The Supreme Court disagreed and reversed the conviction. The Supreme Court observed that the case "lies at the crossroads of the Fourth and Fifth Amendments." It agreed that the circumstances disclosed no violation of the defendant's rights under the Fifth Amendment, but went on to say (pp 601-602): "The exclusionary rule, however, when utilized to effectuate the Fourth Amendment, serves interests and policies that are distinct from those it serves under the Fifth. * * * In order for the causal chain, between the illegal arrest and the statements made subsequent thereto, to be broken, *Wong Sun* requires not merely that the statement meet the Fifth Amendment standard of voluntariness but that it be 'sufficiently an act of free will to purge the primary taint.' 371 US at 486." The controlling rule was then set forth as follows (pp 603-604): "The *Miranda* warnings are an important factor, to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest. But they are not the only factor to be considered. The temporal proximity of the arrest and the confession, the presence of intervening circumstances, see *Johnson v. Louisiana,* 406 U.S. 356, 365 (1972), and, particularly, the purpose and flagrancy of the official misconduct are all relevant. See *Wong Sun v. United States,* 371 U.S., at 491. The voluntariness of the statement is a threshold requirement. Cf. 18 U.S.C. § 3501. And the burden of showing admissibility rests, of course, on the prosecution." The Supreme Court went on to observe (pp 604-605): "Brown's first statement was separated from his illegal arrest by less than two hours, and there was no intervening event of significance whatsoever. * * * We could hold Brown's first statement admissible only if we overrule *Wong Sun.* We decline to do so. And the second statement was clearly the result and the fruit of the ·first." Finally, the court noted that the illegal police action in *Brown* had a quality of purposefulness since the impropriety of the arrest was obvious. "The arrest, both in design and in execution, was investigatory" (p 605). In *Dunaway v New York (supra),* the Supreme Court reaffirmed the principles set forth in

*Brown* in the context of a strikingly similar factual situation. Turning to the facts of this case, the inculpatory statement was made after *Miranda* warnings, a factor which the Supreme Court in *Brown* had identified as important in determining "whether the confession is obtained by exploitation of an illegal arrest." On the other hand, the statement was made some two hours after the defendant's arrest, a time period almost identical with that in *Brown.* Resolution of the issue presented thus turns on the application of the other two factors set forth by the Supreme Court: (1) the purpose and flagrancy of the official misconduct, and (2) the presence of intervening circumstances. In this case, unlike *Brown,* it is clear that the investigating police acted in good faith throughout. As indicated above, the police officers had at least a colorable basis for the judgment that there was probable cause to arrest this defendant. Moreover, under the then controlling authority of *People v Morales (supra),* the police officers could reasonably have understood that a brief detention for investigative purposes was proper. Indeed, it is appropriate to note that the police actions made possible, within a very short period, a scrupulously fair and reliable identification procedure. Also, in distinction to *Brown,* there is no intimation in this record that the police behavior here was "calculated to cause surprise, fright and confusion." *(Brown v Illinois, supra,* p 605.) On the remaining factor described by the Supreme Court in *Brown,* an interesting question is raised by the District Attorney's contention that the photographic identification of the defendant, which preceded his statement, was an intervening circumstance. Although the issue has not been squarely addressed by the Supreme Court, it seems to me probable, though not certain, that a pretrial identification of a suspect during a period of unlawful detention would itself be constitutionally impermissible. It is true that in *Crews v United States* (445 US 463) the Supreme Court sustained the in-court identification of a defendant who had been unlawfully arrested. However, the several opinions in *Crews* all ultimately reached this conclusion on the view that inherent in the jurisdiction of a court to try an unlawfully arrested defendant *(Ker v Illinois,* 119 US 436; *Frisbie v Collins,* 342 US 519) is the right to permit a witness whose testimony is otherwise untainted to identify the defendant at trial. The availability of this analysis to sustain a pretrial identification during a period of unlawful detention is at best doubtful. Indeed, in the principal *Crews* opinion, that of Mr. Justice Brennan, he observed with evident approval that the trial court had suppressed the pretrial identification. However, there is present here a separate significant circumstance with regard to the issue presented, although one that does not fit neatly into the category of intervening circumstances. Varela testified without contradiction that he had seen the defendant in his store almost every day for a period of several years and he also gave similar testimony with regard to the other participants. The inference is strong that the participants in the robbery, including the defendant, committed the crime in the expectation that the victim would not report it to the police. Once the defendant became aware that Varela had in fact reported the event to the police, and that the crime was under active investigation, he must have appreciated that his identification was a foregone conclusion. This circumstance seems to me likely to have been the decisive one in inducing the defendant to acknowledge his guilt as soon as he was questioned. When the opinion in *Brown v Illinois (supra),* is examined as a whole, it becomes apparent that the Supreme Court undertook to set forth a flexible group of criteria for evaluating the admissibility of statements made by defendants after *Miranda* warnings during the course of an unlawful detention. I am satisfied that this record

provides an adequate basis for the conclusion that the defendant's inculpatory statements did not derive from an exploitation of the illegal detention but rather represented "an act of free will." (See *Wong Sun v United States,* 371 US 471, 486, *supra.)* Accordingly, I join the court in affirming the conviction.

Silverman, J. (concurring). It is the claim of defendant that the original arrest was illegal and that his inculpatory statement was so directly the result of the illegal arrest as to require suppression of the statement. Between the time of the original arrest and the inculpatory statement defendant's photograph had been identified by the victim as one of the robbers; and defendant had been given appropriate *Miranda* warnings and waived his right to remain silent. Consideration of the relationship between the allegedly illegal arrest and the statement persuades me that the statement should not be suppressed: (1) We may assume the original arrest to have been illegal (but cf. *People v Boyd,* 79 AD2d 893). (Of course no one suggests that the subject of that illegal seizure, i.e., the defendant himself, should be suppressed *[United States v Crews,* 445 US 463; *Frisbie v Collins,* 342 US 519, 522].) All the other claims of invalidity are derivative from the original allegedly illegal arrest. (2) Because the arrest was illegal, defendant claims that the photographs of the defendant (and the others arrested with him) taken during the period of the detention pursuant to the illegal arrest were also illegal. (Again the District Attorney was not offering the photographs in evidence.) (3) Because the photographs were illegal, defendant claims that the victim's photographic identification of the defendant was illegal. (The District Attorney was not offering evidence of this photographic identification.) (4) Because the photographic identification was illegal, defendant claims that the identification cannot furnish probable cause for continued arrest and detention, so that the detention continued to be illegal. (5) Because the arrest and detention continued to be illegal (see [1], [2], [3] and [4] above), defendant claims that his statement made after the identification by the victim is also illegal and must be suppressed. In addition to this triple or quadruple attenuation there is the further fact that defendant was repeatedly given *Miranda* warnings, which while not conclusive on the point "are an important factor, to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest." *(Brown v Illinois,* 422 US 590, 603.) In the usual suppression case the lack of probable cause to arrest is claimed to taint evidence seized as a result of the arrest. Here, however, we come full circle; now the claimed illegality of the evidence is said to taint the new probable cause. What should the police have done once the victim had identified defendant — whatever the source of the photographs? Should they reasonably have released him — and then rearrested him? Should they have released him, thrown away the photographs, tried to get other photographs and asked the victim for an identification from those photographs? Or should they have pretended they did not know there had ever been an identification? Surely the defendant was not entitled to be immunized forever from prosecution for his crime. And if the police should not have released him after the photographic identification, then his detention was now legal. In the circumstances, it seems to me that even if the illegality of the original arrest be assumed, that taint has been so attenuated and dissipated as not to require suppression of defendant's statement. Put somewhat differently, the statement sought to be suppressed was not the "direct result of the unlawful nature of the police conduct." *(People v Townes,* 41 NY2d 97, 101.)