Titone, J.
(concurring). I agree with the majority that there should be a reversal, but cannot join its opinion which establishes an exclusionary rule under our State Constitution, thus amending the Constitution in a fashion explicitly rejected by the delegates to the 1938 Constitutional Convention, and overruling three decisions sub silentio (People v Richter’s Jewelers, 291 NY 161 [Lehman, Ch. J.]; People v Defore, 242 NY 13 [Cardozo, Ch. J.], cert denied 270 US 657; People v Adams, 176 NY 351, affd 192 US 585). As shall be demonstrated, exclusion of evidence is not a command of NY Constitution, article I, § 12. Rather, it is a judicially declared rule of evidence which the Legislature is free to abrogate.
The question of whether evidence obtained in a lawless fashion should be inadmissible was first addressed by us in People v Adams (supra). In accordance with the then settled common-law rule, we held that "the manner in which the witnesses for the People became possessed of the documentary evidence is a matter of no importance” (People v Adams, supra, at p 359).
Following the Supreme Court’s adoption of an exclusionary rule in Federal prosecutions (Weeks v United States, 232 US 383), then Chief Judge Cardozo reexamined the subject in People v Defore (242 NY 13, supra), the seminal opinion in the Nation (see, 8 Wigmore, Evidence §§ 2183, 2184a [McNaughton rev 1961]). In his ever eloquent style, Cardozo explained why the common-law rule adopted in Adams remained sound, and that the "Legislature * * * has acquiesced in the ruling of this court that the prohibition of the search did not anathematize the evidence yielded through the search * * * We must hold it to be the law until those organs of government by *409 which a change of public policy is normally effected, shall give notice to the courts that the change has come to pass” (People v Defore, supra, at pp 23, 25).
In subsequent years, none of the "organs of government” acted favorably on any proposal to depart from Defore (see, Sackler v Sackler, 15 NY2d 40, 42). More important, the Revised Record of the New York State Constitutional Convention of 1938, at which NY Constitution, article I, § 12 prohibiting unreasonable searches and seizures was adopted, contains unequivocal authority for the proposition that the exclusionary rule does not exist as a constitutional remedy.
Two major proposals were considered relating to unreasonable searches and seizures at the 1938 Constitutional Convention. The first, introduced by Senator Dunnigan, contained a prohibition against the use of evidence unlawfully obtained.[1] The second proposal, introduced by the Bill of Rights Committee, contained no such prohibitory clause and reflected Civil Rights Law § 8. The merit of each proposal was debated at great length (1 Revised Record of New York State Constitutional Convention of 1938, at 406-594). The Dunnigan proposal, which would have established a constitutional bar against unreasonable searches and seizures, coupled with an exclusionary rule, was sharply criticized by a number of the delegates.
Chief Judge Cardozo’s view that adoption of an exclusionary rule was a task for the political branches of government was reiterated by Delegate H. E. Lewis, who aptly stated: "It is interesting to note that although in the Defore case Judge Cardozo said if there is to be any change making the use of evidence illegally obtained inadmissible, it should be by legis-. lative fiat, and even though that decision is twelve years old no Legislature — and during that time Senator Dunnigan has been there all those years, I think he said — no legislature has ever dared suggest the prohibition of the use of evidence where it involves incriminating acts.” (1 Revised Record, at 426.)
In addition, the relative permanence of the constitutional change contemplated by the Dunnigan proposal was not overlooked. As noted by Delegate Reigelman: "Mr. President, this is not a statute we are considering. A statute can be quickly *410 repealed if we make a mistake. It is the Constitution, a basic and presumably permanent document, and one that cannot be readily changed. We are asked to write into that document the principle not merely that certain rights shall not be invaded, not only that the law-enforcement officer who invades those rights may be subject to punishment, but that the victim of the invasion, however vicious, however brutal, however dangerous to society he may be, and however atrocious his offense, might have the additional compensation and benefit of going free. To do otherwise, we are told, is to place the State in the indefensible position of taking advantage of its own wrong. I think that that is a sheer sophistry. It is based, in my opinion, upon an obvious confusion of thought.” (1 Revised Record, at 416.)
Subsequent to the lengthy debate, and after citation to Cardozo, Holmes and Wigmore, the proposal of the Bill of Rights Committee, which lacked the prohibitory clause, was advanced by the Committee of the Whole. By a vote of 90 (aye) to 69 (no), the delegates approved the proposal of the Bill of Rights Committee, and it was subsequently fully indorsed. Thus, the Convention rejected the Dunnigan proposal, which contained a provision mandating the exclusion of evidence, incorporated Civil Rights Law § 8 into the State Constitution, and retained the Defore rationale.
Nonetheless, in 1943 argument was made to this court that the mere inclusion of a bar against unreasonable searches and seizures in the State Constitution compelled the adoption of an exclusionary rule (People v Richter’s Jewelers, 291 NY 161, supra). Chief Judge Lehman explained that the Defore rule remained unchanged and that it was beyond the power of this court to adopt the rule by decisional law. His cogent analysis cannot be improved upon and states my position precisely and concisely (id., at pp 168-169):
"Since that decision [People v Defore, supra], no 'organ of government’ has given notice to the courts that the change has come to pass. True, the immunity from unreasonable search and seizure is no longer a creature of statute, for in 1938 the statute was incorporated in the Constitution. The language remains the same as the language of the Civil Rights Law when this court defined its scope in People v. Defore (supra) and is the same as the language of the Federal Constitution. Doubtless if the effect of that language had not been previously determined authoritatively by this court and *411 if the Legislature had not for almost forty years acquiesced in that ruling, argument might be made that ordinarily the same language in the Constitution of the State of New York and in the Constitution of the United States should be given the same effect and that a sound public policy dictates the conclusion that the constitutional right of immunity of the individual from unreasonable search and seizure should be implemented by rejection of evidence obtained by public officers in violation of the rights of the individual. Even now the Legislature may, if it chooses, give heed to such arguments. This court cannot properly do so.
"The framers of the new section of the Constitution were fully informed that in this State the rule was firmly established by old decisions that rejection of evidence obtained by a public officer through unreasonable search and seizure is not the legal consequence of the officer’s trespass. Certainly it cannot be said that' the incorporation of the statutory prohibition into the Constitution without change of language was intended to change the scope and effect of the prohibition in a matter of grave importance about which much controversy had raged and is still raging. The intention to leave the rule unchanged is clear even without resort to the proceedings of the convention, and examination of those proceedings merely confirms that conclusion. There is room for discussion whether the convention acted wisely in rejecting proposals to change the New York rule formulated in People v. Defore. There is hardly room for discussion that the convention decided that no change in the rule should be made by it, leaving the Legislature free, as it had been before, to determine whether and in what circumstances evidence obtained by trespass should be rejected.”
It thus cannot be urged that an exclusionary rule was engrafted upon article I, § 12, by implication or otherwise.
In 1961, the Supreme Court, overruling prior precedent (Wolf v Colorado, 338 US 25), held in Mapp v Ohio (367 US 643), that evidence obtained in violation of the 4th Amendment, made applicable to the States through the due process clause, was inadmissible in a State criminal prosecution. We followed Mapp on constraint, observing that People v Richter’s Jewelers (supra), People v Defore (supra) and People v Adams (supra) otherwise remained authoritative (see, People v Loria, 10 NY2d 368, 370). In Sackler v Sackler (15 NY2d 40, 42, supra), Chief Judge Desmond remarked that the State rule *412 had not otherwise been changed: "Nowhere, as all admit, is there any constitutional, statutory or decisional authority for rejecting otherwise valid evidence on [the] ground [of illegal entry]. Our State’s prohibitions against unreasonable search and seizures (N. Y. Const., art. I, § 12; Civil Rights Law, § 8) do not have that purpose or effect”. (See also, People v Horman, 22 NY2d 378, 381, cert denied 393 US 1057; Richardson, Evidence §§ 558, 560 [10th ed].) Further, as has the Supreme Court (United States v Calandra, 414 US 338, 347), we have rejected the notion that the exclusionary rule operates as some sort of personal constitutional right of the party aggrieved, embracing, instead, the Supreme Court’s concept that the exclusionary rule is a judicially created remedy designed to protect privacy values generally through its deterrent effect (People v Young, 55 NY2d 419, 425; People v Adams, 53 NY2d 1, 9, cert denied 454 US 854; People v McGrath, 46 NY2d 12, 21, cert denied 440 US 972).
Recently, the pendulum has swung: the Supreme Court has tended to read its prior decisions interpreting the 4th Amendment narrowly. This court has generally followed a policy of uniformity so that police officers and lower courts will have the benefit of a clear bright-line rule (e.g., People v Gonzalez, 62 NY2d 386, 389-390; People v Ponder, 54 NY2d 160). As we put it in People v Ponder (supra, at p 165), "section 12 of article I of the New York State Constitution conforms with the Fourth Amendment regarding the proscription against unreasonable searches and seizures, and this identity of language supports a policy of uniformity in both State and Federal courts.”
In a few cases, however, this court has declined to read the 4th Amendment and NY Constitution, article I, § 12 as coextensive and has suppressed evidence on State grounds (see, e.g., People v Gokey, 60 NY2d 309; People v Elwell, 50 NY2d 231). But not one of these cases purports to overrule People v Richter’s Jewelers (291 NY 161, supra), People v Defore (242 NY 13, supra) or People v Adams (176 NY 351, supra) and they are inconsistent with the analysis in People v Gonzalez (62 NY2d 386, 389-390, supra), a subsequent decision. It appears that the question of whether an exclusionary rule is supported by NY Constitution, article I, § 12[2] was not raised *413 by the parties and in fact it has not been raised here. Whether the exclusionary sanction implicitly adopted is constitutionally based, or a product of a "judicially declared rule of evidence” (People v Cahan, 44 Cal 2d 434, 442, 282 P2d 905, 910 [Traynor, J.]), which the Legislature is free to abrogate, was not discussed.
From a purely stare decisis viewpoint, these are "odd cases” which should now be rejected (People v Hobson, 39 NY2d 479, 487). As former Chief Judge Breitel put it, "Stare decisis, if it is to be more than shibboleth, requires more subtle analysis. Indeed, the true doctrine by its own vitality should not, perversely, give to its violation strength and stability. That would be like the patricide receiving mercy because he is an orphan. The odd cases rode roughshod over stare decisis and now would be accorded stare decisis as their legitimate right, whether or not they express sound, good, or acceptable doctrine” (People v Hobson, supra, at p 487).
In England, where the entire doctrine of stare decisis originated with the birth of the common law, it is basic "that where material cases * * * which show that a court has decided a case wrongly were not brought to its attention the court is not bound by that decision in a subsequent case” (Nicholas v Penny [1950] 2 KB 466, 473; see also, Young v Bristol Aeroplane Co. [1944] KB 718). The same principle has been followed by this court (e.g., Rowland v Mayor, 83 NY 372, 377-378 ["the point now presented (was not a) matter of argument or in any way involved in the (subsequent) decisions”]; cf. People v Hobson, 39 NY2d 479, supra) and other American courts (e.g, Chapman v Dorsey, 230 Minn 279, 41 NW2d 438, 443; State v Mellenberger, 163 Ore 233, 95 P2d 709, 719; see, Comment, Stare Decisis in Courts of Last Resort, 37 Harv L Rev 409).
More important, the doctrine of stare decisis cannot be invoked to sustain a decision which is in conflict with the State Constitution. Our analysis in Board of Educ. v Allen (20 NY2d 109, 117, affd 392 US 236) is squarely on point: "We cannot perpetuate an erroneous interpretation of the State Constitution merely because it is contained in the reports of this court.”
This does not, however, end the matter. Although, as has been shown, our State Constitution does not support an exclusionary rule, decisions like People v Gokey (supra) might well be explained on the ground that the challenged search and *414 seizure was substantively unreasonable, but procedurally exclusion is required as a judge-made common-law rule of evidence (see, Coolidge v New Hampshire, 403 US 443, 493, 498 [Black, J., concurring and dissenting]; People v Cahan, 44 Cal 2d 434, 442, 282 P2d 905, 910, supra), and if the Legislature were to negate that judge-made rule, as it is unquestionably empowered to do, and declare that henceforth courts in this State may not exclude evidence seized in violation of the State Constitution unless exclusion be required by the Federal Constitution, the search would still be illegal and might support a tort action, but we would be compelled to honor the legislative judgment (see, In re Lance W., 37 Cal 3d 873, 888, 694 P2d 744, 752; State v Lavazzoli, 434 So 2d 321, 323 [Fla]). This approach is consistent with that recommended in a leading evidentiary text: "An extensive literature has built up concerning rights under state law that may be enforceable by means of an exclusionary sanction * * * Most of this discussion, however, fails to distinguish between developments of rights under state law, on the one hand, and the development of an exclusionary sanction to remedy violation of those rights, on the other” (McCormick, Evidence § 166, at 449, n 1 [3d ed]).[3]
To be sure, the approach also has its drawbacks. It certainly seems inconsistent with the public policy expressed in People v Richter’s Jewelers (supra) and People v Defore (supra) of deferring to the legislative branch in the first instance. But given what some might perceive to be a change in public policy, arguable legislative acquiescence, and the ability of the Legislature to overturn such a judge-made rule, it seems like the most preferable course (see, Stewart, The Road to Mapp v Ohio and Beyond: The Origins, Development and Future of the Exclusionary Rule in Search and Seizure Cases, 83 Colum L Rev 1365, 1396-1399). After all, the common law of evidence is constantly being refashioned to meet the demands of modern societal expectations (cf. Fleury v Edwards, 14 NY2d 334, 341). Certainly, that approach is better than creating a constitutional precedent, which will be a nonprecedent, based as it is on an erroneous interpretation of the State Constitution (see, Board of Educ. v Allen, 20 NY2d 109, 117, supra).[4]
*415 On the merits, I note that the Supreme Court has not yet passed on whether Illinois v Gates (462 US 213) and United States v Leon (468 US 897) will apply to warrantless seizures, though the issue is apparently presented by California v Ciraolo (No. 84-1513, — US —, 105 S Ct 2672, granting cert to 161 Cal App 3d 1081, 208 Cal Rptr 93) (see generally, Kasmisar, Gates, "Probable Cause, ” "Good Faith, ” and Beyond, 69 Iowa L Rev 551, 581-584), and it has been the custom of this court to decide unsettled questions of constitutional law upon Federal grounds, and to accord broader rights to an accused only after the Supreme Court has declined to do so. I would continue to follow that policy.
Our decisions nevertheless do provide ample support for the result reached today. We have emphasized that an assessment of probable cause turns on what was reasonably and objectively in the mind of law enforcement authorities (People v Jennings, 54 NY2d 518, 523; People v Adams, 53 NY2d 1, 9, cert denied 454 US 854, supra). The "good faith” exception to the exclusionary rule is not applicable simply because the officer has a " 'white heart and empty head’ ” (People v Jennings, supra, at p 523), and in this case application of the exclusionary rule would deter "gut hunch” warrantless arrests (cf. People v Adams, supra), though, at least arguably, a different result should obtain if a warrant be obtained in accordance with our preference for warrants (see, e.g., People v Hanlon, 36 NY2d 549).
Here, the only evidence leading to defendant’s arrest was the statement of an individual with no history of giving reliable information to the police and who exculpated himself *416 from a homicide charge by implicating the defendant in the crime. There being no exigency, the police should have applied for a warrant, placing the informant under oath (see, People v Cantre, 65 NY2d 790; People v Hicks, 38 NY2d 90) or, at least, producing him before a magistrate (People v Brown, 40 NY2d 183). Because the officers did not do so, suppression is appropriate under the judicially formulated rule of exclusion.
For these reasons, I concur in the reversal, but not the majority opinion.
Chief Judge Wachtler and Judges Meyer, Kaye and Alexander concur with Judge Simons; Judge Titone concurs in result in a separate opinion in which Judge Jasen concurs.
Order reversed, etc.

. The Dunnigan proposal provided, in part, "Evidence obtained in violation of this section shall not be received in any hearing, trial or proceeding.” (1 Revised Record, at 406-407.)

. Our right to counsel decisions are, of course, not on point. Those decisions rest upon a different section of the State Constitution (NY Const, art I, § 6), with a different historical backdrop "independent of its Federal counterpart” (People v Settles, 46 NY2d 154, 161).

. I note with interest that the gap in jurisprudential analysis is not limited to New York (compare e.g., State v Alston, 88 NJ 211, 440 A2d 1311; and State v Johnson, 68 NJ 349, 346 A2d 66, with State v Smith, 37 NJ 481, 181 A2d 761; and Eleuteri v Richman, 26 NJ 506, 511, 141 A2d 46, 49).

. Parenthetically, it is not at all clear that our decision is insulated *415 from United States Supreme Court review. The message emanating from Michigan v Long (463 US 1032) and Chief Justice Burger’s concurring opinion in Florida v Casal (462 US 637) is that the rights of the People may not be defeated on independent State grounds where the voters of the State have explicitly precluded their courts from adopting an exclusionary rule broader than that required by the Federal Constitution (cf. Parrot v City of Tallahasee, 381 US 129; N A. A. C. P. v Alabama, 357 US 449; Staub v City of Baxley, 355 US 313; Hill, The Inadequate State Ground, 65 Colum L Rev 1251), as demonstrated by the grant of certiorari in New York v Class (— US —, 105 S Ct 1863 [63 NY2d 491]), a case the majority states was decided purely on State constitutional grounds. This case is of moment because the court finds a Dunaway v New York (442 US 200) violation and, ironically, the Supreme Court’s reversal made that rule binding on us. We had declined to adopt the Dunaway rule as a matter of Federal or State law (People v Dunaway, 35 NY2d 741, vacated 422 US 1053, on remand 38 NY2d 812, 61 AD2d 299, lv dismissed 44 NY2d 855, rearg denied 44 NY2d 930, revd 442 US 200).