**Anthony F. WISE, Petitioner,**

v.

**Charles SCULLY, Respondent.**

**No. 83 Civ. 6662 (KTD).**

United States District Court,
S.D. New York.

March 28, 1984.

Anthony F. Wise, pro se.

William V. Grady, Dutchess County Dist. Atty., Poughkeepsie, N.Y., for respondent; Bridget Rahilly Steller, Asst. Dist. Atty., Poughkeepsie, N.Y., of counsel.

### MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Petitioner Anthony F. Wise, a *pro se* state prisoner, brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254. In essence, one claim is raised in his petition: that the police officer's warrantless arrest of Wise in his home allegedly without either probable cause or exigent circumstances was unconstitutional in light of *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

### FACTS

On February 21, 1978, the Poughkeepsie Police began investigating a robbery-homicide that had occurred the night before. Three elderly sisters, 80, 85, and 89 years of age, were attacked during the night in the bedrooms of their residence. Catherine and Madeline King were robbed and beaten but survived. Mary King was robbed, beaten, and choked to death.

On February 21, Catherine King told a police officer that the assailants were known to her as two black individuals who had shoveled their home's walkway the previous winter. She did not, however, know their names. The police soon learned from a neighbor, Mrs. Quick, that the snow shoveler's were "Tony and his brother."

The following day the police questioned two youths, Larry McFadden and Carl Dallas, about the King sisters' robbery and murder. Dallas stated that the previous day "Babe" (Lorenzo) Wright, a fifteen year old, had told him that Wright had gotten some money from pulling off a job which Dallas would read about. Following

this lead, the police began looking for Wright. They were told by Wright's mother that he was missing, but she believed that he was staying at 95 Catherine Street in Poughkeepsie. Going to that address at about 7:30 p.m., the police were met at the door by someone who identified himself as "Bishmae." The latter's name later was learned to be Saul Holland. Anthony Wise also appeared and stated that the apartment was his, and that Wright was not there.

Eventually the police were able to locate Wright back at his mother's home and they brought him to the police station for questioning. There, Wright admitted knowing who the perpetrators were and, after speaking with a youth counselor, disclosed that they were Holland, Anthony Wise, and Anthony's brother, Donald Wise. Wright stated that he had learned this by overhearing Saul Holland bragging to the petitioner's sisters about how Holland, Anthony Wise, and Donald Wise had tied and beaten the victims in their home.

Thus, the investigation focused on Holland and the Wise brothers, and the police drove to 95 Catherine Street. Five detectives, two uniformed officers, and an assistant district attorney arrived at the darkened house at approximately 12:45 a.m. Three detectives, including one with a shotgun went up and banged on the front door for about five minutes until Madeline South, Anthony Wise's wife, answered the door. Transcript ("Tr.") 73 & 557.[1] The detective carrying the shotgun stood off to the side of the porch within the view of Ms. South. Tr. 202. Ms. South stated that Donald was not there and that Anthony was sleeping. The police indicated that they wished to speak to Anthony or bring him down to the station for questioning. Ms. South permitted the officers into the common part of the hallway, and went up the stairs disappearing into a bedroom. Tr. 73.

When about five minutes had passed a detective, Detective Precious, shouted up the stairs: "Anthony, let's go." Tr. 74. After a second shout of "Anthony" the detective climbed to the top of the stairs before Anthony appeared. *Id.* The detective with the shotgun at this point apparently was at the bottom of the stairs. The detectives advised Wise that they wished to question him at the police station. Tr. 74 & 563. After searching Anthony's clothing before he put it on, the detectives took Anthony to the police station. At 5:30 a.m. Anthony Wise confessed to the robbery and beatings of the King sisters.

The County Court of Dutchess County denied petitioner's motion to suppress his statements as the fruits of an illegal arrest. On September 27, 1978, the County Court entered a judgment after a jury trial convicting Anthony Wise of two counts of Class A–I second degree felony murder, one count of Class B first degree felony robbery, and one count of Class B first degree felony burglary. Wise is presently serving an indeterminate sentence of twenty-five years to life.

Wise properly exhausted his state judicial remedies. He appealed to the Appellate Division, *People v. Wise*, 88 A.D.2d 1113, 452 N.Y.S.2d 473 (2d Dep't 1982), had his motion to reargue denied, and was denied leave to appeal to the New York Court of Appeals, 57 N.Y.2d 962 (1982). The Supreme Court also denied Wise's petition for a writ of certiorari. *Wise v. New York*, —— U.S. ——, 103 S.Ct. 1216, 75 L.Ed.2d 454 (1983). He thereafter brought this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## DISCUSSION

After the petitioner was convicted, the Supreme Court decided *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). In *Payton*, the Court held that the fourth amendment prohibits the police from making a warrantless and nonconsensual entry into a suspect's home to make a felony arrest in the absence of

---

**1.** All transcript references are to the pretrial suppression hearing held by the Dutchess County Court from July 11 to July 18, 1978.

exigent circumstances. 445 U.S. at 590, 100 S.Ct. at 1382. *Payton* was made retroactive and applicable to cases still pending or on direct appeal—such as petitioner's case—in *United States v. Johnson*, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982).

■ The State has not argued that there were exigent circumstances justifying the policemens' entry, nor that the entry was consensual. Rather, relying on the County Court decision, it asserts that Wise was not "under arrest," and that he voluntarily accompanied the police to the station for questioning. The State's argument is factually and legally tenuous. For instance, the principle decision relied upon by the County Court for its conclusion that Wise voluntarily accompanied the officers to the police station was expressly overruled by the Supreme Court. *See Dunaway v. New York*, 61 A.D.2d 299, 302, 402 N.Y.S.2d 490, 492 (1978), *rev'd*, 442 U.S. 200, 206, 99 S.Ct. 2248, 2253, 60 L.Ed.2d 824 (1979). Nevertheless, because I find that there were exigent circumstances justifying the detective's limited entry and probable cause to arrest Wise, the petition is dismissed.

Detective Precious stated at the suppression hearing that the police officers and the assistant district attorney discussed delaying going to 95 Catherine Street until they had an arrest warrant. Tr. 190–92. They concluded that numerous factors warranted against any further delay. *Id.* These same factors also supported Precious' later decision to climb the stairs at 95 Catherine Street. For example, the police officers feared that their earlier 7:30 visit to 95 Catherine Street could have "tipped their hand." Tr. 190. Detective Precious stated that on the first visit, Anthony Wise had been very suspicious of the policemens' motives and had questioned their reasons for searching for Babe Wright. Tr. 158–59. Wise probably would have known that Wright had knowledge of the crime, and he seemed to doubt that three police officers would actually be searching for one juvenile. *Id.*

Furthermore, Detective Groth, who accompanied Detective Precious on the 7:30 visit to 95 Catherine Street, had revealed to petitioner that they had spoken to Wise's stepfather. Tr. 155. Groth stated to petitioner that the police had been told by Wise's stepfather that Anthony and his brother had gone to New York City and that they were still there. *Id.* Detective Groth then asked Anthony if this was true and asked him when had he gotten back. *Id.* In addition, the police had spoken to petitioner's parents inquiring about Anthony and Donald's whereabouts on two occasions shortly before the 12:45 a.m. visit. From all of this the police certainly were justified in their concern that Wise might be aware that the investigation had centered on him and his brother.

The police then went to Wise's home at a late hour of the night. The police stopped their cars—one, a standard blue and white police car—in front of the house and slammed the doors, Tr. 196, which even Ms. South admitted that she had heard. Tr. 557. Several officers circled behind the house. *See* Tr. 197. When the detective banged on the front door with his flashlight "[a]s loud as [he] could," no one responded for five minutes. Tr. 73 & 200. Thereafter, Ms. South, who answered the door, was told that the officers were looking for both brothers and she may have seen the policeman with the shotgun. Tr. 201–02. Ms. South then disappeared upstairs and the Detective overheard murmuring voices. When she did not reappear for five minutes and the Detective received no response to his yells of "Anthony, let's go," the officer was amply justified in climbing the stairs to yell out "Anthony" again. The possibility of Wise attempting to escape or attempting to destroy evidence was too real a potential for the officer to ignore. *See* Tr. 197. Accordingly, I find that the Detective's entry into 95 Catherine Street was justified by exigent circumstances.

■ Petitioner also argues that he had been arrested at this point and did not voluntarily accompany the officers to the

police station. Even if he had been arrested, however, I find that such an arrest was supported by probable cause. The statements of Catherine King, her neighbor Mrs. Quick, Babe (Lorenzo) Wright, Wise's stepfather, and Wise himself together added up to probable cause to arrest the petitioner. Therefore, Wise's petition for a writ of habeas corpus is dismissed.

SO ORDERED.